**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CAUSE NO. 5:25-cr-04750-SMD** |
| | § | |
| **MAXWELL JENSEN** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT'S RESPONSE TO UNITED STATES' BRIEF IN SUPPORT OF DETENTION**

Defendant, Maxwell Jensen, by and through his attorney of record hereby files his response to United States Brief in Support of Detention.

## I. The government has not shown—by clear and convincing evidence—that Mr. Jensen is dangerous or that no conditions can reasonably assure appearance.

Mr. Jensen's pre-trial detention is unwarranted. The government relies on untested hearsay from a confidential source, unauthenticated "preliminary" transcripts, and investigative inferences that do not establish that Mr. Jensen knew any oil at 7 Rivers was stolen.[1] Further, this is a presumption of release case. The United States' arguments fail to address this presumption of release in this matter.[2]

The Bail Reform Act permits detention only when the government proves danger by clear and convincing evidence and nonappearance by a preponderance, after considering the § 3142(g) factors. Detention is a "carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755

[1] Notedly, the Court provided the United States with this briefing to try and obtain a statement from the CS that would clarify items. Clearly that clarification is missing and not available. That is noteworthy and exculpatory in nature.
[2] Any arguments the United States has about violations on release are properly made in the Southern District of Texas case; not in this pre-trial matter.

(1987) (upholding the Act while emphasizing its narrow scope). *See also United States v. Cisneros*, 328 F.3d 610, 616–18 (10th Cir. 2003) (government bears the burden; district court reviews de novo); *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336–38 (10th Cir. 2017) (threshold § 3142(f) inquiry and limits on "flight"); *United States v. Stricklin*, 932 F.2d 1353, 1354–56 (10th Cir. 1991) (burdens under the Act; "weight of the evidence" is the ***least*** important factor)[emphasis added].

Even taking the government's proffer at face value, the disputed evidence is (1) largely hearsay; (2) drawn from a CS whose reliability has not been established; (3) based on unauthenticated, "preliminary" transcripts that the government itself characterizes as preliminary; and (4) missing the critical element of knowledge—i.e., evidence that Mr. Jensen or Mr. Rees knew the oil was stolen.[3] Or in simple terms- extremely weak.

A. **• CS reliability and scope of recordings.**

The government admits "some, but not all" communications with the CS were recorded and that it relies on "preliminary transcripts." United States' Brief *at* 5, 8 (n.3) (stating "preliminary transcripts" of recorded calls). Interestingly while it has an exhibit that shows Maxwell Jensen identifying the 7 Rivers Yard, page 5 of the brief. Any review of the messages shows that the CS never went there or dealt with anyone there until August 21, 2025. *Eviscerating any idea* that the *CS had any idea* about actions at the 7 River Yard. Without authentication, the transcripts carry

[3] The Government seems to be bending over backwards to 'infer' knowledge without acknowledging that it cannot show that it has any inculpatory statements from the five (5) defendants. The Government was given the opportunity to "marshal" its evidence. It has clearly failed. There are payments to Hound Dog, but there is nothing showing that Hound Dog paid Max Jensen for an oil scheme. The United States appears to be relying on recorded and 'unrecorded' evidence. It did not produce the August 21 recording until this motion. However, nothing there or before shows any "knowledge" or intent on the part of Maxwell Jensen.

little weight at detention; and any unrecorded conversations are uncorroborated hearsay from a compensated or benefit-seeking source.[4]

B. • **Knowledge is missing—not admitted.**

The Combined discovery includes a transcript page dated August 2025 reflecting Mr. Jensen warning the CS: "If anyone says the word stolen, just walk away." *See at* USA v. Jensen 261 (highlighted), 262 (context) That language is inconsistent with an agreement to traffic in stolen oil and directly undercuts the government's knowledge theory. The recorded instruction is a clear admonition against illegal activity; any other interpretation is an unsupported, biased inference.

C. • **Tracker and field observations do not establish knowledge.**

Agents observed a vacuum truck connect to pipelines and later saw loads delivered to 7 Rivers; they also obtained trip counts from a tracker. United States' Brief *at* 6–7 (describing 23 trips and video stills) None of this proves Mr. Jensen, Rees or Ortega knew the oil was stolen. Movement of oil and storage in frac tanks is not *illegal per se*. In fact, receiving oil in trucks is what the entire Western part of Texas and "East" New Mexico finds its lively hood on.

D. • **Bank records and equipment registration are not knowledge evidence.**

The brief asserts deposits from Mr. Jensen-affiliated entities and that two frac tanks were registered to his companies. United States' Brief *at* 13–14 (Exs. 11–12). A perfectly legal transaction in New Mexico or West Texas. The Combined file provided here does not include the bank statements or registration documents the government references, and the brief does not show that any payment Mr. Jensen made pertained to stolen oil or that he knew it was stolen. At most, the proffer shows business dealings—equally consistent with lawful activity. Referencing Cm/Ecf 13-5, Max Jensen didn't begin release in the Southern District of Texas until May 9, 2025. The

---

[4] The Source makes comments to needing to pay for his boat in the Bahamas more often that other topics.

United States theory was that this act began after release, yet it attempts to claw back to transactions from March to find a money theory.

E. • **"Weight of the evidence" is minimal at detention.**

Even if the Court credits the government's narrative arguendo, the weight factor is the "least important," particularly where the government leans on an untested CS and unauthenticated transcripts. *Stricklin*, 932 F.2d at 1355 (10th Cir.). In fact, as referenced above, this would have been solved easily if the United States had simply clarified all the multiple ambiguities by getting a declaration from the CS. The government's failure to provide a declaration from the CS is a glaring crucial evidentiary gap, reinforcing the defense's position that the CS's reliability and knowledge are suspect or simply missing.

On this record, the government has not carried its burden to justify detention.

**II. The government has not established admissible co-conspirator statements or a foundation to impute the CS/Rees/Ortega statements to Mr. Jensen.**

The Court should not rely on "co-conspirator" statements to establish dangerousness or knowledge absent the predicate findings required by Rule 801(d)(2)(E). The government's own brief labels key transcripts as "preliminary."

Co-conspirator statements require a finding—by a preponderance—that a conspiracy existed, that both the declarant and the defendant were members, and that the statements were made during and in furtherance of the conspiracy. Fed. R. Evid. 801(d)(2)(E). The Tenth Circuit requires independent evidence to support the preliminary finding. *See, e.g., Cisneros*, 328 F.3d at 617–18 (discussing standards and de novo review).

The government quotes or paraphrases statements attributed to Mr. Rees, Mr. Ortega and to the CS. But it has not authenticated the recordings or logs or offered independent evidence that any statement was "in furtherance" of a conspiracy involving Mr. Jensen. The Court inquired at the hearing and the United States eventually provided an admission that it did not have any inculpatory statements from co-defendants at time of arrest. At this point they have not even shown that there was a conspiracy. The sale of stolen oil by a truck driver without more is not a conspiracy, it's a theft by one person---the truck driver. More importantly in this scenario, a theft by a person who has not implicated others.

• The government's brief repeatedly relies on its own characterization of conversations (e.g., "admissions" about 7 Rivers volumes, permits, and "hundreds of tickets"), but it does not append or authenticate the source audio, and it concedes these are "preliminary transcripts." United States' Brief at 8–12 (n.3; multiple "Discovery … Bates" citations).

• Before using these statements substantively to prove knowledge or dangerousness, the Court would typically require a proper foundation. At detention, the Court may consider hearsay, but **weight** matters: unauthenticated, preliminary transcripts from a CS should be given little weight—especially where the content (e.g., the "walk away if anyone says stolen" admonition) negates knowledge. And when the CS could have provided a declaration clarifying vague innuendos.

The co-conspirator hearsay foundation is missing; the Court should discount these statements substantially when weighing § 3142(g). Especially as there is not a single admission, but rather innuendos in all of the recordings.

**III. The government has not shown a New Mexico nexus that supports its broad narrative against Mr. Jensen.**

The record does not establish that Mr. Jensen knowingly joined a New Mexico-based theft conspiracy.

Under § 3142(g)(1)–(2), the Court considers the "nature and circumstances" of the charged offense and the "weight of the evidence." These factors require specific, reliable facts—not speculation or guilt by association. *Salerno*, 481 U.S. at 750–52; *Stricklin*, 932 F.2d at 1355.

The field observations show the vacuum truck connected to the sites, travel to 7 Rivers[5], and later deliveries to a Texas LACT. United States' Brief *at* 6–7 That shows movement of oil; it does not prove Mr. Jensen, Rees or any other individual knew the oil was stolen or that he "Jensen" (directed New Mexico thefts). Counsel in a footnote addresses the largest hole in the United States case aside from any lack of incriminating statements—the fact that the CS only produced load tickets showing <u>recovered oil</u>; nothing from a well head. The CS had NO knowledge of any oil coming from a well head. The United States cannot identify otherwise!

1. At the hearing in front of the District Court, the undersigned attempted to outline the differences. There are two yards- Odessa and Carlsbad. Oil at the Odessa yard is recovered, waste or poor quality oil. This is supported by the ticket and others shown by Exhbit "A". Further conversations with the CS show that this oil was expected to be $20-25 per barrel. The Carlsbad oil on the other had was from a well head and quality crude oil. The United

---

[5] Counsel would state that Basic Sediment and Water ("BS&W" will be a central issue in this case). BS&W shows the mud, water and other content that is in the loads. The United States has totally failed to acknowledge this in its discovery (Exhibit "A") and its theory- pure oil. The tickets in Exhibit "A" show that the rejected load and was from the Odessa yard. There is nothing to show that this was occurring at the 7 Rivers yard in Carlsbad. Counsel would proffer and the United States has ignored what it has produced that a rejected load with a high BS&W means that the oil is NOT from a well head. An inconvenient fact if the case rests on oil coming from a well head.

States calculated this oil at a much higher value and does not try to explain the difference. *See Application at para 9, page 3.* Exhibit "B"

**A. • The only clear "knowledge" statement in the current discovery cuts the other way.**

Mr. Jensen's recorded instruction—"If anyone says the word stolen, just walk away"—is inconsistent with knowledge and intent. USA v. Jensen 261–262 (highlighted). This is what Mom told us to do as kids, walk away when someone is doing wrong… The United States does not point to any contradiction by the CS that he had knowledge that any oil was stolen. That's presumably because that would be factually impossible under the information produced.

**B. • Volume and "tickets" talk is ambiguous.** The brief cites statements about "hundreds of unload tickets," "permits," and "two or three loads yesterday." United States' Brief *at* 10–15. Those statements, even if credited, do not establish the critical element that Mr. Jensen knew the oil was stolen as opposed to participating in or exploring a legitimately papered operation. In fact, referencing those and the text messages, show that the oil that was purchased with the tickets is distinctly different than the oil that was referenced by the tickets showing the oil sold from the Odessa yard which is where the CS was and only worked. Those tickets show a BS&W and rejected loads.

The government has **failed** to establish a knowing New Mexico nexus. Under *Stricklin*, that thin "weight" cannot drive detention.

**IV. Tailored conditions will reasonably assure appearance and safety.**

If the Court harbors any concerns, stringent conditions—verified residence, electronic monitoring, travel restrictions, no contact with named individuals, no oil-related business activity

without preapproval, device monitoring, and third-party custodian—will meet § 3142's standard. Counsel would remind the United States that this is not a presumption case and its allegations pre-date any post release conduct.[6]

The Bail Reform Act favors release under the "least restrictive" conditions that will reasonably assure appearance and community safety; detention is for cases where **no** conditions suffice. *Cisneros*, 328 F.3d at 616–18; *Ailon-Ailon*, 875 F.3d at 1336–37.

The present record does not show ongoing dangerous conduct, or even illegal conduct that cannot be managed with tight conditions; nor does it show a substantial flight risk under *Ailon-Ailon's* interpretation of "flee." There are no allegations that Mr. Jensen ever left the District of Utah where he was "confined" by the conditions of release.

Additionally, recently three (3) counsel and an investigator traveled to Las Cruces for two all day meetings with Mr. Jensen. This meeting was required to take place at the courthouse as there was no method of having this take place at Dona Ana Detention Facility. Dona Ana facility offered 1.5 hours of contact visit on a Wednesday afternoon. As the Court may know, that is the multipurpose room and its only available on a very limited basis making trial preparation for the much larger Southern District Case almost impossible to be lasting or complete. This would affect that district's counsel's ability to provide effective assistance for trial preparation. Pretrial detention that unnecessarily impedes Mr. Jensen's Sixth Amendment right to effective counsel, especially for a complex white-collar conspiracy charge requiring extensive communication and

[6] Defendant presumes it included prior transactions that are not in any way culpable simply to raise the amount of money at issue trying to create an air of impropriety.

document review should be decided carefully. Counsel would proffer that there is approximately 8 terra bytes of data in the Southern District of Texas matter.

The Court should deny detention and impose strict conditions if needed.

**V. Specific evidentiary gaps the government must address (and that the defense flags for the Court)**

2. **Authentication of transcripts and audio.** The Combined file shows "unverified" transcript pages with highlights. USA v. Jensen 259–262. As pointed out previously, the Government has not and cannot provide any inculpatory statements from any of the five defendants to date. These statements were certainly not provided by their audios as reflected by the transcripts.
3. **Full CS file and benefits.** No reliability proffer appears in the record; the Court should require disclosure of payments, promises, consideration, criminal history, and prior cooperation outcomes. See United States' Brief at 5, 8 (relying heavily on CS)
4. **Bank records and equipment registrations.** The brief references Exs. 11–12 but does not provide source documents in the Combined file. United States' Brief at 13–14
5. **Tracker warrant and method.** The defense requests the warrant, affidavits, and complete tracker data to test scope, minimization, and whether the data tie Mr. Jensen to any criminal knowledge rather than mere logistics. United States' Brief at 6–7 (tracker obtained July 30, 2025). Interestingly the tracker was placed on the vacuum truck because it was seen leaving the 7 Rivers Yard. Not that there was any statement, proof or any evidence that there was any knowledge by Jensen, Rees or Ortega as to the source or owner of the oil it was transporting. *See Application at para 9, page 3.* Exhibit "B".

1. That application alleges that the oil at 600 barrels a day was valued at $39,000. *Id*.
2. The text messages between Jensen and the CS discuss buying oil at $25 per barrel. The government does not attempt explain this $40/barrel discrepancy. The easy answer is that Jensen was asking the CS to purchase and provide oil of the type and BS&W that was in the frac tanks at the Odessa yard, very low quality oil. That is a distinct and different product than the government would like to believe there was knowledge of being purchased.

6. **Co-conspirator foundation.** Before any reliance on Rees/Ortega statements "in furtherance," the government must lay the Rule 801(d)(2)(E) foundation with independent evidence; otherwise, such statements should carry little weight at detention. See standards summarized in Cisneros, 328 F.3d at 617–18.
7. **Prior arrest-** The Court appeared concerned with the prior history involving a family violence case. The undersigned would proffer that the summons was issued, Exhibit "C" to an address in Utah, when Mr. Jensen lived in Texas. That case was later dismissed. Exhibit "D". This should assuage the concern that there was a failure to appear, but rather a mistake that was resolved through the correct judicial process.

**VI. Requested relief**

Deny the government's detention request. Alternatively, set release on stringent conditions tailored to the Court's concerns under § 3142.

*/s/ Brock Benjamin*
BROCK BENJAMIN
Attorney for Defendant
New Mexico Bar No. 141535
1013 E. San Antonio Ave.
El Paso, Texas 79901
Tel: 915-412-5858
Fax: 915-503-2224
E-Mail: brock@brockmorganbenjamin.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 1st day of December, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and service to all CM/ECF registrants.

s/ *Brock Benjamin*
BROCK BENJAMIN

ANDREWS TX, 79714
CHEMTREC 1-800-424-9300

## LOAD INFORMATION

Product Type: UN1267, PETROLEUM CRUDE OIL, 3, PG 1

| | | | |
|---|---|---|---|
| BOL #: | 000001671 | Trucked By: | HEART RIVER LOGISTICS |
| Ticket #: | 000001671101 | Accepted at: | 6/20/2025 07:16 |
| Split Ticket #: | | Confirmation #: | PERMIAN-1671 |

## PICK UP INFORMATION

| | | | |
|---|---|---|---|
| PickUp Account: | PERMIAN FUELS LLC | | |
| PickUp Name: | TORO ODESSA | | |
| Operator: | PERMIAN FUELS | | |
| PickUp #: | | Arrived at: | 6/20/2025 08:41 |
| Federal PickUp #: | | Load Time: | 01:00:02 |
| Legal Description: | | Wait Time: | 00:52:58 |
| Latitude: | 0.0 | Pickup at: | 6/20/2025 10:34 |
| Longitude: | 0.0 | Loaded Miles: | 5.0 |
| County/State: | ECTOR, TX | | |
| Wait Time Notes: | Waited on location For instructions. | | |
| Reject Notes: | High BS &W . No Acces | | |
| Other Notes: | | | |

## PICK UP

| | | | |
|---|---|---|---|
| Load Status | REJECT | Reject Reason | HIGH BOTTOMS |
| Gauge Type | HAND | BS&W(%) | |
| TANK | OIL METER 1 | Top Temp | |
| Tank Capacity | | Bottom Temp | |
| Tank BPI | 0.00 | Observed Temp | |
| Top Gauge | 0 ft 0 in (0.0 in) | Observed Gravity | |
| Bottom Gauge | 0 ft 0 in (0.0 in) | Corrected Gravity | |
| Est. Gross Barrels | 0.00 | Seal Off # | |
| Est. Net Barrels | | Seal Off Time | |
| Est. GSV | | Seal On # | |
| Bottom Height | | Seal On Time | |
| Odometer | | | |
| Third Party Gross Barrels | 0.0 | | |
| Third Party Net Barrels: | 0.0 | | |

## DROP OFF INFORMATION

| | | | |
|---|---|---|---|
| Drop Off Account: | PERMIAN FUELS LLC | | |
| Drop Off Name: | PERMIAN FUELS YARD - ODESSA | | |
| Operator: | | Arrived at: | 6/20/2025 10:34 |
| Drop Off #: | | Unload Time: | 00:00:00 |
| Federal Drop off #: | | Wait Time: | 00:00:00 |
| Latitude: | 31.767373 | Dropped Off at: | 6/20/2025 10:34 |
| Longitude: | -102.545947 | | |
| County/State: | ECTOR, TX | | |
| Wait Time Notes | | | |
| Other Notes: | | | |

## DROP OFF

Odometer

| PICK UP | | DROP OFF | |
|---|---|---|---|
| Truck #: | 527 | Truck #: | 527 |
| Trailer #: | HR107 | Trailer #: | HR107 |
| Driver Name: | | Driver Name: | |
| Driver ID: | | Driver ID: | |
| Drivers Signature: | | Drivers Signature: | |

EXHIBIT "A"

AO 102 (01/09) Application for a Tracking Warrant

FILED
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO
JUL 30 2025
MITCHELL R. ELFERS
CLERK OF COURT

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

In the Matter of the Tracking of
*(Identify the person to be tracked or describe the object or property to be used for tracking)*
White, 2006, Eagle Vacuum Truck with New Mexico License Plate 1464FTL and VIN number 24150PM46189396

Case No. 25MR1255

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of 18 U.S.C. § 659. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:
The Subject Vehicle, [color, year, make, and model of vehicle] with NM license plate XXX and VIN number XXX.

☑ Delayed notice of 30 days (give exact ending date if more than 30 days: ______________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

TRENT BOONE Digitally signed by TRENT BOONE Date: 2025.07.29 14:05:24 -06'00'
*Applicant's signature*

Trent Boone, Special Agent
*Applicant's printed name and title*

Electronically signed and telephonically sworn

Date: 07/30/2025

[signature]
*Judge's signature*

City and state: Las Cruces, New Mexico

Gregory B. Wormuth, Chief U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF AN APPLICATION TO INSTALL, MONITOR AND SERVICE A MOBILE TRACKING DEVICE, PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE RULE 41

1. I am a Special Agent in the Bureau of Land Management (BLM), United States Department of Interior. I have been employed since June 2015. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2507(7) and am empowered by law to conduct investigations and to make arrest for offenses enumerated in 18 U.S.C. § 2516.

2. My experience as a Special Agent includes, but is not limited to, conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, I have become familiar with the manner in which crude oil theft operations are structured, to include how the crude oil is stolen, transported, and sold.

3. Based off my training and experience I have knowledge of how oil theft schemes typically involve a series of coordinated illegal activities aimed at stealing crude oil from pipelines or tank batteries (oil storage tanks). Suspects identify vulnerable locations in the oilfield and either recruit an employee of the oil company to help facilitate the theft or monitor the area with multiple lookout vehicles while the theft occurs. Most crude oil thefts involve using water hauling vacuum trucks which are prevalent in the oilfield and can carry up to 130 barrels of crude oil per load. The oil is then transported to storage facilities consisting of existing tank batteries or stored in 500-barrel frac tanks that are also prevalent in the oilfield. The crude oil is then sold to a midstream company using fraudulent paperwork or selling it under the disguise of "slop oil".

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions

with other agents of the FBI, and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated.

5. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the installation, monitoring, and servicing of a tracking device, I have not included details of every aspect of the investigation. Facts not set forth herein are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

6. Based on my investigation, I believe that a white tractor trailer showing a US DOT number 3183291 and company name M.I.S. Services LLC, with the trailer bearing New Mexico license plate 1464FTL, registered to Ayala Lainez at 2320 Wyoming Street, Carlsbad, NM 88220 ("the Subject Vehicle"), is presently being used in furtherance of crude oil theft in violation of 18 U.S.C. § 659. Moreover, probable cause exists to believe that the installation of a tracking device in or on the Subject Vehicle, and use of the tracking device, will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes. The sources of my information and the grounds for my belief are as follows.

7. On June 18th, 2025, an FBI Special Agent of the Midland, Texas Resident Agency Office was notified by a source of information that Maxwell Jensen was seeking to orchestrate a scheme in which he would pay off employees of oil production companies for crude oil. The source

explained to FBI that Jensen would be storing the stolen oil at a 4154 7 Rivers Highway, Carlsbad, New Mexico, and that Jensen was seeking a vacuum truck driver to pick up oil from third party locations. FBI notified me of the scheme. The source later reported that the same location was used to receive approximately 600 barrels of oil every day. At current crude oil prices 600 barrels is valued at $39,000 per day.

8. I started doing periodic surveillance of the location. The location has three 500-barrel frac tanks and a white in color water hauling vacuum truck that was frequently parked there. From experience on other recent cases, I know that crude oil thieves utilize frac tanks to store stolen crude oil and vacuum trucks are being used to steal millions of dollars' worth of crude oil from a variety of locations, including oil pipelines. This vacuum truck is bearing US DOT number 3183291 and a company name M.I.S. LLC in red lettering on the side of the truck.

9. On July 22, 2025, I observed the vacuum truck leaving the location. I followed from a distance while the vacuum truck went out into the oilfield. I observed the vacuum truck drive up to a Plains All American Pipeline site, located at coordinates 32.62494 -104.10080 and hook up to a portion of the pipeline at the site. I left the area and returned later to photograph the scene. While I was leaving the area after taking photos, I observed that the vacuum truck had already returned to another Plains All American Pipeline site, located at coordinates 32.65158 -104.10264 on the same pipeline. A Plains All American company truck was there assisting the vacuum truck driver, suggesting that a Plains All American employee may be complicit in the scheme.

10. Based on my training, experience, and participation in this investigation, I believe that there is probable cause that the Subject Vehicle has been and will continue to be used to further a crude oil theft operation, in violation of 18 U.S.C. § 659. Based on my training and experience, as well as my knowledge of these actors, I believe Maxwell Jensen will continue to be involved in the

aforementioned criminal activity. I further believe that Maxwell Jensen will use the Subject Vehicle in furtherance of that activity.

11. Based on my training, experience, and participation in this investigation, I believe that there is probable cause to believe that the installation and monitoring of a mobile tracking device on the Subject Vehicle will lead to evidence of the aforementioned crimes as well as to the identification of other individuals who are engaged in the commission of these crimes, including, but not limited to the location of where crude oil is being stolen and stored until sold.

12. In order to track the movement of the Subject Vehicle effectively and to decrease the chance of detection, I seek to place a tracking device in or on the Subject Vehicle while it is in the District of New Mexico. As the Subject Vehicle has been observed by agents parked at 4156 Seven Rivers Highway in Carlsbad, NM, and it may be necessary to enter onto private property in order to affect the installation, repair, replacement, and removal of the tracking device. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours.

13. In the event that the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for the period of 45 days from the date the warrant is issued. The tracking device may produce signals from inside private garages or other such location not open to the public or visual surveillance.

14. I request that the warrant and accompanying affidavit and application in support thereof, as they reveal an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against the flight of fugitives, and better ensure the safety of agents and others, except that copies of the warrant in full or redacted form may be

maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the BLM, and federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant.

15. In accordance with 18 U.S.C. 3103a (b) and Federal Rule of Criminal Procedure 41(f)(3), I request that notification of the execution of the warrant be delayed for a period not to exceed 30 days after the end of the authorized period of tracking (including any extensions thereof) because there is reasonable cause to believe that providing immediate notification would seriously jeopardize the investigation.

16. WHEREFORE, I respectively request that the Court issue a warrant authorizing members of BLM or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to install a tracking device in or on the Subject Vehicle within the District of New Mexico within 10 calendar days of the issuance of the requested warrant, to perform any necessary maintenance, including changing the batteries, and to remove said tracking device from the Subject Vehicle after the use of the tracking device has ended. Agents also request permission to surreptitiously enter private property and/or move the Subject Vehicle to effect the installation, repair, replacement, and removal of the tracking device, and to monitor the tracking device, for a period of 45 days following from the date of the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the District of New Mexico. I further request that the BLM be allowed to continue monitoring the device, including signals produced from inside private garages and other locations not open to the public or visual

surveillance, and signals produced in the event that the Subject Vehicle leaves the District of New Mexico, but remains within the United States.

Respectfully Submitted,
TRENT BOONE Digitally signed by TRENT BOONE Date: 2025.07.29 14:06:09 -06'00'

Trent Boone
BLM Special Agent

Subscribed and sworn to before me this
30th day of July, 2025.

Gregory B. Wormuth
Chief United States Magistrate Judge

AO 104 (Rev. 07/16) Tracking Warrant

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

In the Matter of the Tracking of
*(Identify the person, property, or object to be tracked)*

White, 2006, Eagle Vacuum Truck with New Mexico License Plate 1464FTL and VIN number 24150PM46189396

Case No. 25MR1255

## TRACKING WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district; ☐ is not now located in this district, but will be at execution; ☐ the activity in this district relates to domestic or international terrorism; ☐ other: ______________________.

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* ☐ using the object ☐ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device:

Agents may monitor, repair, and remove a tracking device on the Subject Vehicle, including when it is in a place not open to public view. Agents are authorized to enter private property where the Subject Vehicle is parked and/or move the Subject Vehicle to monitor, repair and remove a tracking device.

**YOU ARE COMMANDED** to execute this warrant and begin use of the object or complete any installation authorized by the warrant by August 8, 2025 *(no later than 10 days from the date this warrant was issued)* and may continue to use the device until September 12, 2025 *(no later than 45 days from the date this warrant was issued)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☐ into the vehicle described above ☑ onto the private property described above

☐ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)* **Gregory B. Wormuth** and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b)(1), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and this warrant prohibits the seizure of any tangible property or any wire or electronic communications (as defined in 18 U.S.C § 2510). I therefore authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*

☑ for 30 days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of ______________.

Date and time issued: 07/30/2025 12:47 pm

*Judge's signature*

City and state: Las Cruces, New Mexico

Gregory B. Wormuth, Chief U.S. Magistrate Judge
*Printed name and title*

AO 104 (Rev. 07/16) Tracking Warrant (Page 2)

Case No.

## Return of Tracking Warrant With Installation

1. Date and time tracking device installed: ______________________
2. Dates and times tracking device maintained: ______________________
3. Date and time tracking device removed: ______________________
4. The tracking device was used from *(date and time)*: ______________________

   to *(date and time)*: ______________________ .

## Return of Tracking Warrant Without Installation

1. Date warrant executed: ______________________
2. The tracking information was obtained from *(date and time)*: ______________________

   to *(date and time)*: ______________________ .

## Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: 07/30/2025

______________________
*Executing officer's signature*

______________________
*Printed name and title*

The Order of the Court is stated below:
**Dated:** September 05, 2023 11:48:06 AM
At the direction of:
/s/ LINDA JONES
District Court Judge
by
/s/ SYDNEE MAYNARD
District Court Clerk

| IN THE THIRD DISTRICT COURT, SALT LAKE DEPARTMENT<br>IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH | |
|---|---|
| THE STATE OF UTAH,<br><br>Plaintiff,<br><br>vs.<br><br>MAXWELL STERLING JENSEN<br>DOB: 02/21/2000<br>11177 South Eagle View Drive<br>Sandy, UT 84092<br>SO#: NONE<br>DAO#: 23.015610 | **DOMESTIC VIOLENCE SUMMONS** |
| Defendant. | Case No. 231909274 |

THE STATE OF UTAH to MAXWELL STERLING JENSEN;

YOU ARE HEREBY SUMMONED to appear before a magistrate of the THIRD DISTRICT COURT, SALT LAKE DEPARTMENT at the time and place shown below:

DATE: 9/26/2023 TIME: 2:00PM *****IN PERSON HEARING*****

PLACE: THIRD DISTRICT COURT, SALT LAKE DEPARTMENT
MATHESON COURTHOUSE, COURTROOM S31
450 S STATE ST
SALT LAKE CITY, UT 84114-0210

To answer to a charge made against you upon the Information of Brianna Lloyd – Draper Police Department, Agency Case No. DR2023-18403 for 1 COUNT AGGRAVATED ASSAULT, a Third Degree Felony in violation of Utah Code Annotated, 1953, as amended.

EXHIBIT "C"

**The Order of the Court is stated below:**
**Dated:** January 24, 2024 03:56:57 PM /s/ BARRY LAWRENCE District Court Judge

SIM GILL, Bar No. 6389
District Attorney for Salt Lake County
ALEXIS MAW, Bar No. 18051
Deputy District Attorney
35 East 500 South
Salt Lake City, Utah 84111
(385) 468-7600

IN THE THIRD DISTRICT COURT

IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| THE STATE OF UTAH<br>Plaintiff<br><br>-vs-<br><br>MAXWELL STERLING JENSEN,<br>Defendant | **ORDER OF DISMISSAL**<br><br>Case No. 231909274<br>DA No. 23.015610<br><br>Hon. BARRY LAWRENCE |

Based upon the motion of the Plaintiff and in the interests of justice,

IT IS HEREBY ORDERED that the information in the above-entitled matter be dismissed without prejudice.

***EXECUTED AND ENTERED BY THE COURT AS INDICATED BY THE DATE AND SEAL AT THE TOP OF THE PAGE***

EXHIBIT "D"