UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. 25-CR-4750-MIS |
| | ) | |
| vs. | ) | |
| | ) | |
| **MAXWELL JENSEN,** | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S FIRST MOTION TO SUPPRESS**

## I. Background

The United States first learned of a potential oil theft conspiracy operating out of Carlsbad, New Mexico when a Source of Information (SOI) brought information to the FBI in Midland, Texas. The SOI became concerned when Defendant asked him to break a lock on a yard in Odessa, Texas. After further conversations with Defendant, the SOI learned that Defendant had an additional operation in Carlsbad, New Mexico that was stealing oil from a local pipeline. Upon learning this information, the FBI, in coordination with the Bureau of Land Management (BLM), began investigating. BLM Special Agent (SA) Boone went to the address of the Carlsbad Yard the SOI provided. Through physical surveillance, SA Boone followed a vacuum truck from the yard in Carlsbad to a pipeline. He witnessed the truck connect to the pipeline, vacuum oil, and return to the yard. Meanwhile, the SOI began recording his conversations with Defendant.

Though the SOI was continuously giving information to the FBI and Texas Department of Public Safety (DPS), this does not mean the SOI conducted a "search" under the Fourth

Amendment. Defendant has failed to show that the recordings are even considered a search under the Fourth Amendment. Further, Defendant has failed to establish that the SOI's conduct was a violation of the Fourth Amendment.

## II. Facts

On June 11, 2025, the SOI spoke with FBI Special Agent Jeronimus. In this phone call, the SOI explained that he received a call from a "Zach Jensen" about a job the SOI had previously applied for on Indeed.com. "Zach" offered to pay the SOI to travel to a site in Odessa, Texas to break locks on a property and allow trucks to remove property from the site. "Zach" told the SOI that he had additional job sites in Hobbs, New Mexico. On June 16, 2025, the SOI informed SA Jeronimus that he discovered "Zach" was actually Max Jensen and that Max was having frac tanks sent to Hobbs and Carlsbad, New Mexico. Through the next several weeks, the SOI continued to give updates to SA Jeronimus, including screenshots of his conversations with Defendant. On July 13, 2025, SOI began recording his phone conversations with Defendant. The SOI provided the address of the Carlsbad yard to agents. Defendant told SOI that he ran the yard with his buddy "Tom" and gave Tom's company 25% of the profits. BLM SA Boone then conducted physical surveillance on the Carlsbad yard on July 22, 2025 and observed vacuum trucks steal oil from a nearby pipeline.

Agents used the information provided by the SOI, including the recordings, and the physical surveillance conducted to obtain a search warrant to place a tracking device on the vacuum truck seen stealing oil. This resulted in agents tracking the truck to the pipeline in New Mexico to steal oil and then to a site in West Texas to sell the stolen oil. Throughout the investigation, the SOI continued to record his conversations with Defendant and send the recordings to agents.

## III. <u>Argument</u>

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jackson*, 466 U.S. 109, 113 (1984).

First, the SOI was not a government agent when he voluntarily went to the FBI to report a crime. A private party may choose to assist law enforcement without becoming a government agent. *United States v. Poe*, 556 F.3d 1113, 1124 (10th Cir. 2009); *see United States v. Alexander*, 447 F.3d 1290, 1297 (10th Cir. 2006) ("An agency relationship does not develop where the government is an incidental beneficiary of another party's actions[.]").

Second, Defendant brought the SOI into his confidence and trusted the SOI, but that does not in turn mean he had an expectation of privacy. *See, e.g., Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) ("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties"); *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1145-46 (10th Cir. 2014) (discussing invited-informer doctrine). Therefore, any text messages received by the SOI are not a search because Defendant had no expectation of privacy in that conversation.

Finally, "when the government records a defendant's conversation with another party, pursuant to that party's consent, neither the Fourth Amendment nor 18 U.S.C. 2511(2)(c) is violated." *United States v. McKneely*, 69 F.3d 1067, 1074 (10th Cir. 1995). The voluntariness of that consent is viewed in the totality of the circumstances. *United States v. Tangeman*, 30 F.3d

950, 952 (8th Cir. 1994). Law enforcement agents may even record conversations of suspects with the consent and use of an undercover agent without implicating the Fourth Amendment. *United States v. Davis*, 1 F.3d 1014, 1016 (10th Cir. 1993) (determining that a law enforcement officer may lawfully record a conversation with the consent of one of the parties of the conversation).

Whether or not the SOI was a government agent when he recorded conversations with Defendant is irrelevant, because the courts have already determined that the Fourth Amendment is not implicated as long as the party recording the conversation consents. The totality of the circumstances suggests that the SOI recorded Defendant voluntarily. The SOI continuously, and willingly, provided information to the government about his interactions with Defendant. The SOI is the one who approached agents, and he continued to assist law enforcement by providing what information he could. The SOI even agreed to assist law enforcement when he went to the Carlsbad yard to meet with Rees and Ortega in person. The case started because of the SOI's voluntary information and continued to be made possible by the SOI's willingness to help the government. Defendant has not asserted that the SOI was involuntarily recording Defendant because there is nothing to suggest anything other than the SOI's consent.

## IV. Conclusion

The Tenth Circuit has held that consensual recordings do not violate the Fourth Amendment. The SOI consensually recorded conversations with Defendant, and therefore there was no violation of the Fourth Amendment. The United States asks the Court to Deny Defendant's Motion to Suppress.

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
RYAN ELLISON
Acting United States Attorney

***Electronically Filed 1/7/26***
ALYSON R. HEHR
Assistant United States Attorney
200 N. Church Street
Las Cruces, NM 88001
(575) 323-5241

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

***Electronically Filed 1/7/26***
ALYSON R. HEHR
Assistant U.S. Attorney