UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 25-CR-4750-MIS |
| | ) | |
| **MAXWELL JENSEN,** | ) | |
| | ) | |
| Defendant. | ) | |

# UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT JENSEN'S ARGUMENT TO EXCLUDE THE STATE INFORMANT AND INFORMANT-DERIVED INFORMATION FOR DISCOVERY NONCOMPLIANCE

The United States respectfully responds in opposition to Defendant Jensen's Argument to Exclude the State Informant and Informant-Derived Information for Discovery Noncompliance. (Def. Mot. [Docket No. 151]). The motion should be denied.

Defendant seeks the extraordinary sanction of exclusion because the Texas Department of Public Safety ("DPS") would not provide a copy of its internal source file and instead offered a supervised review.[1] But Rule 16 does not create a right to open-file discovery, Brady and Giglio do not require wholesale production of a confidential source-management file, and Tenth Circuit law treats exclusion as a last resort. *See* Fed. R. Crim. P. 16(a)(1)(E), (a)(2), (d)(1)–(2); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Bagley*, 473 U.S. 667, 675 (1985); *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987); *United States v. Jumaev*, 20 F.4th 518, 547 (10th Cir. 2021).

[1] The United States is not free to disregard DPS's position and simply hand defense counsel an unredacted copy on its own; as the March 4 email reflects, DPS would not permit that form of production, and DPS's public guidance routes requests for DPS records through subpoena or other legal process except for a narrow category of Brady/Giglio employee-disclosure requests.

The United States does not dispute its obligation to disclose any material exculpatory or impeachment information from the DPS file in time for effective use. The real dispute is narrower: whether Defendant was entitled to possess and copy the entire internal DPS source file, and whether the lack of a copy justifies excluding the informant and all informant-derived information. It does not.

## I. BACKGROUND

On March 23, 2026, Defendant filed the present motion asking the Court to "exclude the state informant and informant-derived information" as a sanction for alleged discovery noncompliance. (*See* Def. Mot. [Docket No. 151] at 1, 6–7). The motion argues that the Court directed the Government to obtain "all files" from the Texas Department of Public Safety ("DPS"), including "shadow files," and contends that the Government failed to comply because DPS would not provide a copy of its internal source file. (*Id.* at 1–5).

The immediate dispute arises from a March 4, 2026, email. In that email, the United States advised defense counsel: "Due to DPS policies, they cannot give us a copy of their internal source file. However, we can make it available to review." (*See* Def. Mot. [Docket No. 151] at 8–9). The same email disclosed that the file included "payment receipts" and the source's "initial sign-up form," which included "information relating to an Aryan brotherhood tattoo." *Id.* at 9). Thus, the dispute is not about the existence of the file. The Government disclosed that the file existed, identified key categories of what it contained, and offered review. The significance of that email is straightforward: this is not a case in which the United States chose, as a matter of its own preference, to withhold a copy of the

file[2] and DPS will not authorize the Government to provide such a copy without further court process or similar legal compulsion.

At the February 18, 2026, motion hearing, the Court told defense counsel: "Discovery is not concluded till March." (Mot. Hr'g Tr. at 4–5, [Docket No. 147-1]). Later in that same hearing, the Government asked for "at least until March 9th" to gather "all the discovery the defense is asking for," and then requested two weeks after that to supplement briefing. (*Id.* at 76–77). The transcript therefore does not reflect a clear, unambiguous order that a copy of the internal DPS source file had to be turned over by March 9 on pain of exclusion; indeed, Defendant himself characterizes March 9 as an "assumed" deadline. (Def. Mot. [Docket No. 151] at 1, 8).

The hearing further reflects that the parties were not litigating in an evidentiary vacuum. By the time of the hearing, the parties were discussing recorded calls, screenshots, text messages, and reports reflecting the source's information. (*See, e.g.*, Mot. Hr'g Tr. at 9–20, 41–60 [Docket No. 147-1]). The present dispute is therefore narrower than Defendant suggests: it concerns whether defense counsel was entitled to a copy of DPS's internal source-management file, not whether Defendant was denied access to the substance of the source's information.[3]

---

[2] However, for the reasons stated in this response, the United States believes that the applicable legal standards do not give Defendant carte blanche access to the DPS's informant file at this time.

[3] The hearing also shows that some categories of information Defendant now seeks to sweep into a blanket exclusion request were either independently obtained or were not going to be offered from the source. As to load tickets, the Court asked, "So you don't want to use the load tickets you got from the source of information?" and the Government answered, "No, Your Honor." (Mot. Hr'g Tr. at 59, [Docket No. 147-1]). The Government further explained that officers later obtained load tickets through a consent search of a truck at the arrest scene. (*Id.* at 59–60). As to bank records, the Government represented: "We were able to subpoena those bank accounts." (*Id.* at 60). And when the Court asked whether the bank-account details given by the source would be used at trial, the Government answered: "Only to establish how we received the information to subpoena the grand jury." *Id.* Finally, as to the warrant, the Government represented that

In short, Defendant asks the Court to convert a dispute over the form of access to a sensitive internal DPS source file into a basis for excluding the informant and all informant-derived information. The law does not support that requested remedy.

## II. STANDARD OF REVIEW

Because Defendant seeks exclusion as a discovery sanction, the governing framework begins with Rule 16. Rule 16(a)(1)(E) requires the Government, upon request, to permit a defendant "to inspect and to copy or photograph" certain documents and objects within the Government's possession, custody, or control. But a defendant must still make the required showing of materiality; speculation is not enough. See Fed. R. Crim. P. 16(a)(1)(E); *United States v. Muhtorov*, 20 F.4th 558, 632 (10th Cir. 2021) (holding defendant failed to make the required prima facie showing of materiality).

Rule 16 is not an open-file rule. *See United States v. Maranzino*, 860 F.2d 981, 985–86 (10th Cir. 1988) (rejecting attempt to inspect prosecution file and holding that Rule 16 "does not authorize a blanket request to see the prosecution's file"). Rule 16(a)(2) therefore excludes "reports, memoranda, or other internal government documents" made in connection with the investigation or prosecution and, except as provided by the Jencks Act, statements made by prospective Government witnesses. Fed. R. Crim. P. 16(a)(2); *see also United States v. Metropolitan Enters., Inc.*, 728 F.2d 444, 451 (10th Cir. 1984).[4]

a call and the location of the site were used, but that the call was recorded only after surveillance had already begun. (*Id.* at 57–58).

[4] The Jencks Act, in turn, provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness . . . shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). *See Metropolitan Enters.*, 728 F.2d at 451 (holding there was no Jencks violation because Jencks material need not be produced before the witness testified on direct).

Rule 16 also expressly permits the Court to manage sensitive discovery. For good cause, the Court may deny, restrict, or defer discovery; specify its time, place, and manner; and impose other just conditions. Fed. R. Crim. P. 16(d)(1)–(2). The Tenth Circuit has recognized that authority in cases involving confidential or sensitive information. *See United States v. Lustyik*, 833 F.3d 1263, 1271 (10th Cir. 2016); *Muhtorov*, 20 F.4th at 632.

The Constitution does not create a broader right to rummage through government files. As the Supreme Court has held, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford*, 429 U.S. at 559. Likewise, *Bagley* states that the prosecutor "is not required to deliver his entire file to defense counsel," but only evidence favorable to the accused that is material in the *Brady* sense. 473 U.S. at 675. And *Ritchie* rejected the premise that defense counsel may search government files for himself: "A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files." 480 U.S. at 59. "In the typical case," the Court continued, "it is the State that decides which information must be disclosed," and "[d]efense counsel has no constitutional right to conduct his own search of the State's files to argue relevance." *Id.* at 59–60.

Of course, *Brady* and *Giglio* impose real disclosure obligations on the Government. *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused" violates due process where the evidence "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Giglio* further holds that "[w]hen the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. United States*, 405 U.S. 150, 154 (1972) (citation

omitted). But *Giglio* also makes clear that relief is not automatic whenever a later review turns up something "possibly useful"; "[a] finding of materiality of the evidence is required under *Brady*." *Id.*

Confidential-informant issues are also governed by a balancing framework, not a rule of wholesale disclosure. In *Roviaro*, the Supreme Court held that the Government's privilege gives way only when disclosure of an informer's identity or communications is "relevant and helpful to the defense of an accused, or is essential to a fair trial." 353 U.S. 53, 60–61 (1957). But there is "no fixed rule"; courts must balance the public interest in protecting the flow of information against the defendant's right to prepare his defense. *Id.* at 62. The Tenth Circuit applies that same approach. *United States v. Cruz*, 680 F.3d 1261, 1262–64 (10th Cir. 2012).

Finally, because Defendant seeks exclusion as a Rule 16 sanction, Tenth Circuit law controls the remedy. Under *Jumaev*, courts consider "(1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery [obligation]; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance." 20 F.4th at 547 (quoting *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988)). The Court must impose "the least severe sanction that will accomplish prompt and full compliance." *Id.* And the Tenth Circuit's instruction is clear: "The preferred sanction is a continuance," and "[i]t would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." *Id.* (citation omitted).

**III. ARGUMENT**

*A. Defendant is not entitled to a copy of DPS's internal source file.*

Defendant's motion starts with the wrong premise. The relevant question is not whether the Court told the Government to gather everything from DPS. The question is whether that directive gave Defendant a substantive right to possess and copy DPS's entire internal source-management file. Neither Rule 16 nor *Brady*/*Giglio* confers such a right.

Rule 16 requires disclosure of specified items that are material, intended for use in the Government's case-in-chief, or obtained from or belonging to the defendant. It does not create a general right to inspect an agency's internal files. See Fed. R. Crim. P. 16(a)(1)(E); *Maranzino*, 860 F.2d at 985–86; *Metropolitan Enters.*, 728 F.2d at 451. Indeed, Rule 16(a)(2) says the opposite: it excludes internal government documents and, subject to the Jencks Act, witness statements. To the extent the DPS source file contains source-administration records, management notes, or witness statements, such materials are not discoverable under Rule 16 alone.

The Supreme Court's cases point the same way. *Bagley* states that the prosecutor "is not required to deliver his entire file to defense counsel." 473 U.S. at 675. *Ritchie* likewise holds that defense counsel has no "unsupervised authority to search through the Commonwealth's files," and no constitutional right "to conduct his own search of the State's files to argue relevance." 480 U.S. at 59–60. Those principles foreclose Defendant's theory that he was entitled, as a matter of federal constitutional or Rule 16 law, to a copy of DPS's entire internal source file.

That does not mean nothing in the file may be discoverable. It means the right runs to material information, not to unrestricted possession of the entire file. If the file contains

material impeachment information—such as payments, promises, benefits, or other bias evidence—the Government must disclose that information in time for effective use. But Defendant cites no authority requiring pretrial production of the whole DPS file as the only permissible way to satisfy that obligation.

*B. Review-only access does not show bad-faith noncompliance.*

Defendant next argues that the Government acted in bad faith by relying on DPS policy and offering only a supervised review. That argument skips over an important point: the United States was not free to override DPS's position and simply hand defense counsel an unredacted copy of the internal source file on its own. The March 4 email disclosed that DPS maintained the file, that DPS would not provide a copy, that the file could be reviewed, and that it contained payment receipts and the source's initial sign-up form. ([Docket No. 151] at 8–9). What Defendant characterizes as bad faith is, at most, a disagreement over the manner in which a sensitive source file could be produced.

Second, Defendant overreads the hearing transcript. His motion itself refers to an "assumed March 9 deadline." (Def. Mot. [Docket No. 151] at 1). And the transcript shows that the Government asked until March 9 to gather the discovery the defense wanted and then requested two weeks to supplement briefing. (Mot. Hr'g Tr. at 76–77, [Docket No. 147-1]). The Court agreed. *Id.* That record does not show a clear order requiring the Government to specifically produce a copy of the DPS source file by March 9 on pain of exclusion. In light of the Order, the government did disclose the underlying information relevant to the defense under *Brady*/*Giglio* to the Defense and offered the opportunity to physically inspect the file.

Third, even if the Court concludes the better practice would have been to seek a protective order or clarifying guidance sooner, that still does not establish bad faith. Under *Jumaev*, exclusion is reserved for the rare case involving bad faith and incurable prejudice. 20 F.4th at 547. This record shows, at most, a dispute over the proper procedure for handling a sensitive internal source file.

*C. Defendant cannot show material prejudice.*

Defendant also fails to show prejudice. He does not identify a specific exculpatory or impeachment item that was suppressed and material in the Brady sense. Instead, he points generally to “payment receipts” and a sign-up form and asks the Court to exclude the informant and all informant-derived information. (Def. Mot. [Docket No. 151] at 5–7). Such a generalized complaint regarding perceived discovery deficiencies is not enough. *See United States v. Golyansky*, 291 F.3d 1245, 1249–50 (10th Cir. 2002); *United States v. Charley*, 189 F.3d 1251, 1262 (10th Cir. 1999).

The record also shows that Defendant already had the substance of the source-related evidence through recorded calls, screenshots, texts, and reports being litigated at the February 18 hearing. (*See* Mot. Hr’g Tr. at 9–20, 41–60, [Docket No. 147-1]). The present dispute concerns the form of access to DPS’s internal source file, not a total absence of source-related discovery. *See Charley*, 189 F.3d at 1262; *United States v. Ivy*, 83 F.3d 1266, 1280 (10th Cir. 1996).

Nor can Defendant show that the specific evidence he seeks to sweep into a blanket exclusion request depends on a copied DPS source file. The Government told the Court it would not use the source-provided load tickets, that bank records were obtained by subpoena, and that surveillance began before the later-recorded call referenced in the

warrant. (Mot. Hr'g Tr. at 57–60, [Docket No. 147-1]). On this record, Defendant cannot show that the absence of a copy of the DPS file caused concrete, incurable prejudice.

Nor does Defendant explain why narrower relief would not suffice. If the Court concludes that a particular payment record or other discrete item should have been disclosed more specifically or earlier, the obvious remedy is targeted production, redaction, in camera review, or a short continuance—not wholesale exclusion of the informant and all informant-derived information.

*D. Brady and Giglio require disclosure of material information, not wholesale production of the source file.*

Defendant is correct on one narrow point: the Government may not withhold material exculpatory or impeachment evidence merely because a state agency would prefer confidentiality. But that premise does not entitle Defendant to the remedy he seeks.

*Brady* requires disclosure of favorable material evidence. 373 U.S. at 87. *Giglio* extends that rule to material credibility evidence when the "reliability of a given witness may well be determinative of guilt or innocence." 405 U.S. at 154 (citation omitted). But neither case creates a constitutional right to open-file discovery. To the contrary, *Weatherford* says *Brady* "did not create" a general constitutional right to discovery, 429 U.S. at 559, and *Bagley* says the prosecutor "is not required to deliver his entire file to defense counsel," 473 U.S. at 675.

That distinction matters here. If the internal DPS source file contains material impeachment information—such as actual payments, promises, benefits, or agreements—that information must be disclosed in time for effective use. The United States does not argue otherwise. But the fact that some material impeachment information may exist in a

file does not convert the entire file into discoverable *Brady* material. And it certainly does not justify pretrial exclusion of the witness.

Although not binding on this Court, the Seventh Circuit's reasoning in *United States v. Phillips*, 854 F.2d 273 (7th Cir. 1988), is persuasive and closely analogous. There, the defendant argued that *Brady* entitled him to the entire FBI informant file rather than the government's summary of that file. The district court reviewed the entire file in camera, found the summary complete and accurate, and denied access to the full file. The Seventh Circuit affirmed, explaining that the district judge "acted properly and protected Phillips's rights when he inspected the entire file in camera, made a finding that the summary was complete and accurate, and restricted Phillips's discovery to the summary." *Id.* at 274. *Phillips* thus confirms the point made here: when sensitive informant materials are involved, Brady does not require wholesale production of the entire source file so long as the Court can ensure—through in camera review, a summary, or targeted disclosure—that any material exculpatory or impeachment information is disclosed in time for effective use.

Furthermore, *Giglio* also cuts against the remedy Defendant requests. The Court emphasized that it did "not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict[.]'" 405 U.S. at 154 (citation omitted). If automatic reversal is not the rule even after trial, automatic pretrial exclusion is all the less appropriate here, where the dispute concerns the form of access to a sensitive source file and no material suppression has been shown.

*E. Roviaro favors tailored protection of sensitive source materia*ls.

Defendant also gestures toward informant-disclosure principles. Those principles do not help him. *Roviaro* holds that the Government's privilege gives way only when disclosure of an informer's identity or the contents of his communication is "relevant and helpful to the defense of an accused, or is essential to a fair [trial.]" 353 U.S. at 60–61. But "[w]e believe that no fixed rule with respect to disclosure is justifiable." *Id.* at 62. Instead, courts must balance the public interest in protecting the flow of information against the defendant's right to prepare his defense. *Id.* The Tenth Circuit applies that same framework. *United States v. Cruz*, 680 F.3d 1261, 1262–64 (10th Cir. 2012).

That balancing test favors tailored protection here, not the sweeping relief Defendant requests. The DPS file is not an ordinary evidence file; it is an internal source-management file. According to the March 4 email, it includes the source's sign-up materials and information relating to an Aryan Brotherhood tattoo. (Def. Mot. [Docket No. 151] at 9). Those features underscore why controlled disclosure, redaction, or in camera review are the appropriate tools. Defendant has not shown that an unredacted copied file is "relevant and helpful" or "essential to a fair [trial.]" At most, he has shown that certain categories within the file may bear on bias or impeachment. That kind of showing may justify targeted disclosure. It does not justify exclusion.

*F. Exclusion is grossly disproportionate.*

Even if the Court concludes some additional disclosure should have occurred earlier, Defendant still is not entitled to exclusion of the informant and all informant-derived information. Under *Jumaev*, the Court considers bad faith, prejudice, and the

feasibility of curing any prejudice with a continuance and must impose "the least severe sanction" adequate to secure compliance. 20 F.4th at 547.

This is not the rare case in which exclusion is warranted. The Tenth Circuit's ordinary rule is the opposite: absent bad faith and incurable prejudice, continuances and narrower remedies are preferred. *See Jumaev*, 20 F.4th at 547–48; *Golyansky*, 291 F.3d at 1249–50. Defendant has not shown the Government acted in bad faith. He has not shown that source-related information was withheld wholesale. He has not identified a specific material item whose late or limited disclosure made effective cross-examination impossible. And he has not shown that lesser relief would be inadequate.

Moreover, Defendant's request to exclude "the informant and informant-derived information," (Def. Mot. [Docket No. 151] at 6–7), is untethered to the actual record. The Government told the Court it would not use source-provided load tickets, (Hr'g Tr. at 59, [Docket No. 147-1]). The Government represented that bank accounts were subpoenaed, and that surveillance had already begun before the later-recorded call was used. (Hr'g Tr. at 57–60, [Docket No. 147-1]). Nothing in Rule 16 turns a dispute over the form of access to a sensitive internal source file into blanket derivative exclusion of all evidence associated in any way with the source.[5]

## IV. CONCLUSION

For these reasons, the Court should deny Defendant Jensen's Argument to Exclude the State Informant and Informant-Derived Information for Discovery Noncompliance,

[5] If the Court concludes that more should have been produced sooner, Rule 16 already provides the answer: targeted production, court-supervised inspection, redactions, in camera review, a protective order, or a limited continuance. *See* Fed. R. Crim. P. 16(d)(1)–(2); *United States v. Gonzales*, 164 F.3d 1285, 1293 (10th Cir. 1999); *Jumaev*, 20 F.4th at 547–48; *Golyansky*, 291 F.3d at 1249–50; Ritchie, 480 U.S. at 60. Exclusion of the informant and all informant-derived information would be a dramatically disproportionate response to the issue actually presented.

[Docket No. 151]. If the Court determines that some additional disclosure from the DPS internal source file is warranted, the United States respectfully requests a tailored remedy instead—such as targeted production of any material impeachment items, redactions, in camera review, or other protective conditions—rather than the extraordinary sanction of exclusion.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
RYAN ELLISON
First Assistant United States Attorney

***Electronically Filed 4/6/26***
JAMES DICKENS
ALYSON R. HEHR
BENJAMIN SUSLAVICH
Assistant United States Attorneys
200 N. Church Street
Las Cruces, NM 88001
(575) 323-5241

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

***Electronically Filed 4/6/26***
BENJAMIN T. SUSLAVICH
Assistant United States Attorney