**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CAUSE NO. 5:25-cr-04750-MIS** |
| | § | |
| **MAXWELL JENSEN** | § | |

**DEFENDANT MAXWELL JENSEN'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, MAXWELL JENSEN (hereinafter "Defendant"), by and through undersigned counsel, respectfully submits his and presents his Objections to the Presentence Investigation Report. After informal objections the United States Probation Office is recommending a sentence with an adjusted offense level of 22 establishing a sentencing range of 41 to 51 months. In support of objections to this range and acceptance of the 11c(1)(C) plea agreement the Defendant would show the following:

**I.**
**PLEA AGREEMENT**

1. The Defendant and the Government entered a plea agreement in this case. Defendant pleaded guilty to Count 1of the Superseding Indictment, through which he was charged with Conspiracy to commit Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §§ 371 and 2314, a Class A felony.

2. Pursuant to the plea agreement, the Government and Defendant agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a specific sentencing in the range of 12 to 24 months imprisonment is the sentence the defendant should receive in this case. The Government and Defendant further agree that Defendant's sentence given in this case should run concurrent to any

sentence received in *United States v. Jensen, et al.,* Criminal Action No. 1:25-cr-257, which is currently pending in the United States District Court, Southern District of Texas, Brownsville Division, or any other prosecution arising from or related to the same facts underlying this prosecutions.

3. The parties further agreed that the amount of restitution to be imposed as part of any sentence in this case will be limited to $350,000, with Defendant and other co-Defendants being held jointly and severally liable for said amount.

4. This plea agreement is contingent upon the Court's acceptance of same, under Federal Rule of Criminal Procedure 11(c)(1)(C). Should this Court reject the plea agreement, neither the Government nor Defendant would be bound by the terms and conditions of the plea agreement.

## II.
## OBJECTIONS

### A. No Special Skill Utilized as Part of Conspiracy

5 Defendant objects to Paragraph 32 of the PSR, whereby the PSR notes that an enhancement under USSG § 3B1.3 "is applicable," even thought it was not added to the calculation because the role enhancement was applied in Paragraph 45. *See PSR at Paragraphs 32 and 45.* To the extent the Probation Office would apply USSG § 3B1.3 in the event the role enhancement in paragraph 45 is removed, Jensen objects. USSG § 3B1.3 authorizes a two-level increase where the defendant "used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." *See* USSG § 3B1.3. A "special skill" is "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing," such as that of "pilots, lawyers, doctors, accountants, chemists, and demolition experts." *See* USSG § 3B1.3 at cmt. n.4. The PSR grounds the special-skill finding in Jensen's "utilizing insider information and connections within the oil industry." *See PSR at Paragraph 32.* Familiarity with, or contacts

within, an industry is not a "special skill" within the meaning of USSG § 3B1.3; it does not require the substantial education, training, or licensing the Guideline contemplates. Jensen requests that no special-skill enhancement under USSG § 3B1.3 be applied, and objections to its inclusion in the PSR. ***By and through multiple emails from Assistant United States Attorney James Dickens, the Government is in agreement with the Court sustaining this objection. See Exhibit A.***

**B. No Showing that Defendant Involved "In the Business of Receiving and Selling Stolen Property"**

6. Defendant objects to Paragraph 42 of the PSR, throughout which a two-level enhancement is applied under USSG § 2B1.1(b)(4), as, given the admitted facts of this case, this enhancement should not apply. USSG § 2B1.1(b)(4) provides for a two-level increase "[i]f the offense involved receiving stolen property, and the defendant was a person in the business of receiving and selling stolen property." *See* USSG § 2B1.1(b)(4). The enhancement is directed at a defendant who operates as a systematic "fence," and it turns on the "requisite sophistication and regularity" of the defendant's dealing in stolen property. *See United States v. Fofanah*, 765 F.3d 141, 147 (2d Cir. 2014). The "level of sophistication" of a fencing operation distinguishes a person who is "in the business" from one who engages only in "simple acts of receiving and selling stolen property." *See United States v. Salemi*, 46 F.3d 207, 210 (2d Cir. 1995).

7. Defendant's involvement in this conspiracy/scheme arose from a single crude-oil scheme spanning roughly five months. *See PSR at Paragraphs 4 and 32.* The PSR identifies no prior or separate stolen-property enterprise; it describes Jensen as the financier of this one operation. *See PSR at Paragraphs 26 and 27.* Moreover, the entities through which Jensen acted—Big Hog Energy and Big Striker Energy—are described in the PSR as operating crude-oil purchasing companies from which Jensen drew regular monthly income, not as vehicles devoted to the recurring receipt and resale of stolen goods. *See PSR at Paragraph 72.* A single criminal scheme,

however serious, does not establish that Jensen "was a person in the business of receiving and selling stolen property" within the meaning of § 2B1.1(b)(4). We request that Defendant's objection be sustained, and that the two-level enhancement in Paragraph 42 be removed from the calculation of Defendant's applicable guideline range.

**C. The Conspiracy at Issue Did Not Involve Sophisticated Means**

8. Defendant objects to Paragraph 43 of the PSR, through which a two-level enhancement is applied under USSG § 2B1.1(b)(10)(C), as, given the admitted facts of this case, this enhancement should not apply. USSG § 2B1.1(b)(10)(C) provides a two-level increase "[i]f … the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means." *See* USSG § 2B1.1(b)(10)(C). Application Note 9(B) to this section defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense." *See* USSG § 2B1.1 at cmt. n.9(B). The inquiry turns on whether the offense conduct itself was especially complex or intricate.

9. In this case, it simply was neither complex nor intricate; rather, the execution of this offense was physically primitive. Vacuum trucks connected hoses to Plains All American Pipeline taps and pumped crude oil into frac tanks. *See PSR at Paragraphs 16, 18 and 33.* Connecting a hose to a pipe is not especially complex or intricate by any measure. The PSR grounds its sophistication finding in Jensen's use of "multiple shell entities and multiple banks." *See PSR at Paragraph 32.* But the entities at issue—Big Hog Energy and Big Striker Energy—were not shell entities; the PSR itself describes them as operating crude-oil purchasing companies from which Jensen earned monthly salary income. *See PSR at Paragraph 72.* Routing operating capital through legitimate operating companies and ordinary bank accounts is routine in lawful commerce; it does not transform a crude, manual theft into especially complex or intricate criminal conduct.

10. Recent authority confirms this distinction. The Second Circuit vacated a sophisticated-means enhancement where the only claimed "sophistication" consisted of garden-variety financial maneuvers—moving fraud proceeds by cashier's check and making structured, sub-$10,000 cash withdrawals—holding that such conduct does not satisfy the "especially complex or especially intricate" standard, and observing that the court had "never … applied the enhancement to a scheme this simple." *See United States v. Guldi*, 141 F.4th 435, 453 (2d Cir. 2025). The same reasoning applies here: standard oilfield equipment, unskilled labor, and a hose do not warrant a sophisticated-means enhancement. Defendant respectfully requests that this Court sustain his objection to the application of this enhancement, and that the two-level enhancement set forth in paragraph 43 be removed. ***By and through multiple emails from Assistant United States Attorney James Dickens, the Government is in agreement with the Court sustaining this objection. See Exhibit A.***

**D. Defendant was not a Manager or Supervisor in the Criminal Activity**

11. Defendant objects to Paragraph 45 of the PSR, through which a three-level enhancement is applied under USSG § 3B1.1(b), as Defendant is classified as a "manager" or "supervisor". Once again, a simple review of the facts and evidence in this case does not support such an enhancement. USSG § 3B1.1(b) calls for a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." *See* USSG § 3B1.1(b). The enhancement requires more than control over the criminal activity in the abstract: "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *See* USSG § 3B1.1 cmt. n.2. A "participant," in turn, is "a person who is criminally responsible for the commission of the offense." *See* USSG § 3B1.1 cmt. n.1. Given the

defined roles of the other parties set forth in the PSR, it is clear that Defendant was neither a manager or supervisor of this conspiracy.

12. First, the PSR's role finding rests in part on Jensen's direction of the confidential source, stating that Jensen "exercised direction and control over the actions of co-defendant Thomas Reese, as well as the CS." *See PSR at Paragraph 32.* The confidential source is not a "participant" within the meaning of USSG § 3B1.1, because a cooperating government source is not "criminally responsible for the commission of the offense." *See* U.S.S.G. § 3B1.1 cmt. n.1. Direction of the confidential source cannot support the enhancement.

13. Second, the PSR's own findings show that co-defendant Rees—not Jensen—directed the on-the-ground operation. Rees owned and operated Hound Dog Energy, LLC at the 7 Rivers facility (*PSR at Paragraph 28)*; managed the business bank accounts (*PSR at Paragraph 28*); oversaw the generation of falsified load tickets (*PSR at Paragraph 28*); controlled the actions of Christopher Ortega (*PSR at Paragraph 28-29*); and received the stolen-oil sale proceeds, including $192,660.00 in ACH payments from Caribou Energy directly into his corporate account (*PSR at Paragraph 24*). The PSR characterizes Rees's role as "aggravated." (*PSR at Paragraph 28*.) Consistent with that independent authority, it was Rees—not Jensen—who was charged with the money-laundering offenses: Conspiracy to Launder Money (Count 3) and Laundering of Monetary Instruments (Counts 6 and 7). *See PSR at Paragraph 3.* Jensen was charged only with Counts 1 and 2.[1]

14. Third, as to co-defendant, Christopher Ortega, the PSR establishes that although Jensen initially recruited Ortega, Ortega was "placed under the direction of Rees," and "helped recruit the

---

[1] As this Court is aware, Count 2 was not a substantive count arising out of the alleged conduct giving rise to the other substantive counts in the superseding indictment. Rather, Count 2 centered solely on Defendant's alleged conduct occurring while out on pretrial release from the criminal case arising out of the Southern District of Texas.

drivers … under the direction of Rees." *See PSR at Paragraph 29.* Jensen's own recorded statement – cited in the PSR – reiterates that fact: "I hired him [Christopher Ortega] but then I kind of passed him off to that Tom guy." *See PSR at Paragraph 22.* Recruiting a participant who is then supervised by another is not the same as managing or supervising that participant in the commission of the offense. This is best illustrated by the absence of Jensen in any of the text messages of the individuals moving the oil and also messages between Rees and Ortega regarding management of the operations of the yard. Jensen's function was that of a financier who supplied capital and equipment. *See PSR at Paragraphs 15 and 27.* That role does not establish that he managed or supervised another criminally responsible participant, as USSG § 3B1.1(b) requires. Accordingly, the enhancement under the PSR cannot be support by evidence. As such, Defendant respectfully requests that his objection be sustained, and the three-level enhancement in paragraph 45 be removed from the PSR and consideration in the calculation of Defendant's applicable guideline range.

**E. Court Cannot Rely on a "Bare Arrest Record" in Determining Sentence**

15. Defendant objects to Paragraph 56 of his PSR, and, specifically, the inclusion of his 2023 arrest for aggravated assault in the PSR, and use in the determination of the sentence in this case. The inclusion of this incident/arrest, with no underlying facts, constitutes a "bare arrest record", whose inclusion in the PSR violates the Due Process Clause of the Fifth Amendment. The Fifth Circuit has held that a "bare arrest record", in the context of a PSR, "describes the reference to the mere fact of an arrest – i.e. the date, charge, jurisdiction and disposition – without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest . . . The mere fact of an arrest, by itself, is not reliable evidence of guilt." *See U.S. v. Harris,* 702 F.3d 226, 229 (5th Cir. 2012). The Third Circuit has held that "a bare arrest record –

without more – does not justify an assumption that a defendant has committed other crimes and it therefore can not support increasing his/her sentence in the absence of adequate proof of criminal activity." *See U.S. v. Berry*, 553 F,3d 273, 284 (3rd Cir. 2009).

16. The use and consideration of the underlying incident as noted in Paragraph 56 violates the standing legal precedent prohibiting bare arrest records at sentencing, and would unduly prejudice Defendant. While noting the underlying facts and circumstances surrounding the arrest, along with the ultimate disposition, Paragraph 56 fails to include the reasoning for the dismissal. Had the PSR's author reviewed the entirety of the case, they would have discovered that the prosecution declined to proceed with formal charges, given the alleged victim's role in the underlying conflict and lack of credibility. Exhibit "B".

17. The inclusion of these facts – and their being excluded from the PSR – will adversely impact Defendant in a number of ways. First, if the PSR is considered as written, it could result in an upward variance of Defendant's agreed-upon sentence. Second, the inclusion of an arrest for aggravated assault in his PSR would ultimately impact the type of facility he could be placed in by the United States Bureau of Prisons – an unduly harsh and unjust consequence for a crime for which he was never ***indicted***, much less ***convicted***.

18. As such, Defendant respectfully requests that Paragraph 56 be stricken and removed from the PSR, or, in the alternative, that a full and complete explanation detailing the subsequent investigation and prosecutorial decision to dismiss the case be included in same.

## H. Summary of the Guideline Calculation if the Objections Are Sustained

| Guideline provision | PSR ¶ | PSR | If sustained |
|---|---|---|---|
| Base offense level (§ 2X1.1; § 2B1.1(a)(2)) | — | 6 | 6 |
| Loss more than $250,000 (§ 2B1.1(b)(1)(G)) | ¶ 41 | +12 | +12 |
| In the business of receiving/selling stolen property (§ 2B1.1(b)(4)) | ¶ 42 | +2 | — |
| Sophisticated means (§ 2B1.1(b)(10)(C)) | ¶ 43 | +2 | — |
| Manager or supervisor (§ 3B1.1(b)) | ¶ 45 | +3 | — |
| Offense committed while on release (§ 3C1.3 / 18 U.S.C. § 3147) | ¶ 46 | -- | — |
| **Adjusted offense level** | — | **25** | **18** |
| Acceptance of responsibility (§ 3E1.1) | ¶ 49 | -3 | −2 (−3) |
| **Total offense level** | — | **22** | **16 (15)** |
| Criminal History Category | — | I | I |
| **Advisory guideline range** | — | **41-51 mos.** | **21–27 mos. (18–24)** |

*Figures in parentheses reflect the third acceptance-of-responsibility level under § 3E1.1(b) upon the Government's motion. The PSR's offense level 28 corresponds to a range of 78–97 months, limited to the 60-month statutory maximum. (PSR ¶ 78.)*

19. If each of the foregoing objections is sustained, the adjusted offense level falls from 28 to 18. With the two-level reduction for acceptance of responsibility under § 3E1.1(a)—and a third level available on the Government's motion under § 3E1.1(b), because the offense level before that reduction exceeds 16—the total offense level becomes 16 (or 15 with the third level). At Criminal History Category I, that produces an advisory guideline range of 21–27 months at offense level 16, or 18–24 months at offense level 15, as compared to the offense level 28 reflected in the PSR. *See PSR at Paragraphs 47, 50 and 78*. The resulting range materially overlaps the 12-to-24-month sentence stipulated in the Rule 11(c)(1)(C) plea agreement. *See PSR at Paragraphs 6 and 79.*

## I. Request for Variance Due to Inflationary Guideline Adjustments

20. Starting November 1, 2026 the United States Sentencing Guideline §2B1.1 is being changed to reflect the following-

**Amendment:**

**§2B1.1. Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States**

* * *

(b) Specific Offense Characteristics

(1) If the loss exceeded ~~$6,500~~$9,000, increase the offense level as follows:

| [MULTIPLIER USED] | LOSS (APPLY THE GREATEST) | INCREASE IN LEVEL |
|---|---|---|
| [1.38] | (A) ~~$6,500~~$9,000 or less | no increase |
| [1.38] | (B) More than ~~$6,500~~$9,000 | add **2** |
| [1.33] | (C) More than ~~$15,000~~$20,000 | add **4** |
| [1.38] | (D) More than ~~$40,000~~$55,000 | add **6** |
| [1.58] | (E) More than ~~$95,000~~$150,000 | add **8** |
| [1.33] | (F) More than ~~$150,000~~$200,000 | add **10** |
| [1.40] | (G) More than ~~$250,000~~$350,000 | add **12** |
| [1.36] | (H) More than ~~$550,000~~$750,000 | add **14** |
| [1.33] | (I) More than ~~$1,500,000~~$2,000,000 | add **16** |
| [1.43] | (J) More than ~~$3,500,000~~$5,000,000 | add **18** |
| [1.58] | (K) More than ~~$9,500,000~~$15,000,000 | add **20** |
| [1.40] | (L) More than ~~$25,000,000~~$35,000,000 | add **22** |
| [1.38] | (M) More than ~~$65,000,000~~$90,000,000 | add **24** |
| [1.33] | (N) More than ~~$150,000,000~~$200,000,000 | add **26** |
| [1.40] | (O) More than ~~$250,000,000~~$350,000,000 | add **28** |
| [1.36] | (P) More than ~~$550,000,000~~$750,000,000 | add **30**. |

* * *

Imposition of a sentence based on the parties agreement of a limit of $350,000 will be the bottom of the 12 point level. As such a 10 point increase is presumably the correct adjustment. This amendment will be implemented absent action by Congress.

## J. Objection to Paragraph 77

21. Defendant objects to the assignment of ownership of 305 Lamar Ct., Odessa Texas. The Ector County Central Appraisal District shows that this property is registered to Joshua C. Martin. Exhibit "C".

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Defendant, **MAXWELL JENSEN,** respectfully requests that the Court sustain his objections, properly calculate his offense level, adopt and accept the plea agreement between him and Government, and sentence him in pursuant to said agreement.

Respectfully submitted,

*/s/ Brock Benjamin*
BROCK BENJAMIN
Attorney for Defendant
New Mexico Bar No. 141535
1013 E. San Antonio Ave.
El Paso, Texas 79901
Tel: 915-412-5858
Fax: 915-503-2224
E-Mail: brock@brockmorganbenjamin.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 9th day of July, 2026, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and service to all CM/ECF registrants.

*/s/ Brock Benjamin*
BROCK BENJAMIN

---

**Subject:** RE: DRAFT Letter
**Date:** Monday, June 29, 2026 at 10:40:01 AM Mountain Daylight Time
**From:** Dickens, James (USANM) <James.Dickens@usdoj.gov>
**To:** Benigno (Trey) Martinez <trey@mbmtlawfirm.com>, Suslavich, Benjamin (USANM) <Benjamin.Suslavich@usdoj.gov>
**CC:** Brock Benjamin <brock@brockmorganbenjamin.com>, Robert Guerra <rguerra@rguerralaw.com>, Mayra Padilla <mayra@mbmtlawfirm.com>
**Attachments:** image001.png

Greetings:

After reviewing your letter, I can agree with your objections to paragraphs 41, 43, 32, 46 and 49 (including your objection to the §3147). Obviously, that will still result in a GLR higher than what was agreed upon in the plea agreement. The Government will honor the plea agreement by strongly urging the court to sentence within the agreement. Perhaps, Jensen wishes to debrief to justify a further downward variance.

Please send your letter, as is, to probation and I will respond with my position.

Please let me know if you have any questions.

Sincerely,

James A Dickens
AUSA
575-463-7432

---

**From:** Benigno (Trey) Martinez <trey@mbmtlawfirm.com>
**Sent:** Monday, June 29, 2026 9:25 AM
**To:** Dickens, James (USANM) <James.Dickens@usdoj.gov>; Suslavich, Benjamin (USANM) <Benjamin.Suslavich@usdoj.gov>
**Cc:** Brock Benjamin <brock@brockmorganbenjamin.com>; Robert Guerra <rguerra@rguerralaw.com>; Mayra Padilla <mayra@mbmtlawfirm.com>
**Subject:** [EXTERNAL] RE: DRAFT Letter

Good morning all:

I am writing to follow up on last week's email. Did you guys have time to review and discuss?

Let us know so we can take the appropriate next steps forward.

Regards,

EXHIBIT "A"



**BENIGNO (TREY) MARTINEZ**
Attorney

Phone: 956-550-4868
Fax: 956-621-0135
Email: trey@mbmtlawfirm.com
Address: 1201 E. Van Buren, Brownsville, Texas 78520
Website: mbmtlawfirm.com

MBMT LAW FIRM

This transmission may be: (1) subject to the attorney-client privilege, (2) an attorney work product, or (3) strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.

To the extent this communication contains any statement regarding federal taxes, that statement was not written or intended to be used, and it cannot be used, by any person (1) as a basis for avoiding federal tax penalties that may be imposed on that person, or (2) to promote, market or recommend to another party any transaction or matter addressed herein.

---

**From:** Benigno (Trey) Martinez
**Sent:** Wednesday, June 24, 2026 11:40 AM
**To:** Dickens, James (USANM) <james.dickens@usdoj.gov>; Suslavich, Benjamin (USANM) <benjamin.suslavich@usdoj.gov>
**Cc:** Brock Benjamin <brock@brockmorganbenjamin.com>; Robert Guerra <rguerra@rguerralaw.com>; Mayra Padilla <mayra@mbmtlawfirm.com>
**Subject:** DRAFT Letter

James and Ben:

Pursuant to our conversation, I am attaching a draft of the letter we intend to send to the PO. It is merely a draft and am sure that there may be more than one grammatical/substantive error, but I wanted to get the ball rolling to see your position on these objections.

Let us know your thoughts when you have a moment.

Regards,



**BENIGNO (TREY) MARTINEZ**
Attorney

Phone: 956-550-4868
Fax: 956-621-0135
Email: trey@mbmtlawfirm.com
Address: 1201 E. Van Buren, Brownsville, Texas 78520
Website: mbmtlawfirm.com

MBMT LAW FIRM

This transmission may be: (1) subject to the attorney-client privilege, (2) an attorney work product, or (3) strictly confidential. If you are not the intended recipient of this message, you may not disclose, print, copy or disseminate this information. If you have received this in error, please reply and notify the sender (only) and delete the message. Unauthorized interception of this e-mail is a violation of federal criminal law.

To the extent this communication contains any statement regarding federal taxes, that statement was not written or intended to be used, and it cannot be used, by any person (1) as a basis for avoiding federal tax penalties that may be imposed on that person, or (2) to promote, market or recommend to another party any transaction or matter addressed herein.

SIM GILL, Bar No. 6389
District Attorney for Salt Lake County
ALEXIS MAW, Bar No. 18051
Deputy District Attorney
35 East 500 South
Salt Lake City, Utah 84111
(385) 468-7600

IN THE THIRD DISTRICT COURT

IN AND FOR THE COUNTY OF SALT LAKE, STATE OF UTAH

| | |
|---|---|
| THE STATE OF UTAH<br>Plaintiff<br><br>-vs-<br><br>MAXWELL STERLING JENSEN,<br>Defendant | **MOTION TO DISMISS**<br><br>Case No. 231909274<br>DA No. 23.015610<br><br>Hon. BARRY LAWRENCE |

Alexis Maw, attorney for plaintiff, moves this court for an order dismissing the above-entitled matter without prejudice due to witness issues. Defense counsel for the Defendant, Nicole Faas, stipulated to the motion via email on January 24, 2024.

DATED this 24th day of January, 2024.

SIM GILL
District Attorney

*<u>/s/ Alexis Maw</u>*
ALEXIS MAW
Deputy District Attorney

EXHIBIT "B"

**CERTIFICATE OF DELIVERY**

I hereby certify that a true and correct copy of the foregoing Motion to Dismiss was sent, this 24th day of January, 2024, via the Court's electronic filing system.

*/s/ Alexis Maw*
ALEXIS MAW
Deputy District Attorney



Ector County Appraisal District
1301 E 8th Street
Odessa, Texas 79761-4703
Monday through Friday 8:00 AM - 5:00 PM
Phone:432-332-6834
ector@ectorcad.org

Ector County Appraisal District Home

# Parcel 21225.02741.00000

View Tax Bill | Print Page | Return to Search | New Search | Previous Parcel | Next Parcel

## Owners

MARTIN JOSHUA C
305 LAMAR CT
ODESSA, TX 79765-1465

Request Electronic Communication

## Parcel Summary

| | |
|---|---|
| Location | 305 LAMAR CT<br>ODESSA 79765 |
| Use Code | A1: Single Family Residence |
| Tax District | 007: COU ODE ECISD ECHD OC |
| Map Parcel | 10 |
| Acreage | 0.129 |
| Block | 15 |
| Last Sale Date | 01/25/2022 |
| Last Sale Instrument | 2022-1617 |
| Subdivision | NORTH PARK ADDN [21225] |




Click map to navigate | View in full-page map

## Legal Description

NORTH PARK ADDN
BLOCK 15
LOT 26

PROTEST DEADLINE: 05/15/2026

## Preliminary Values

| STANDARD | 2026 |
|---|---|
| Total Building Value | $280,917 |
| Total Land Value | $14,285 |
| Total Property Value | $295,202 |
| Special Use Appraisal | $0 |
| Cap Loss | $0 |
| Net Assessed Value | $295,202 |

## Value History

| | 2025 | 2024 | 2023 | 2022 | 2021 | 2020 |
|---|---|---|---|---|---|---|
| Total Building Value | $287,630 | $273,766 | $268,400 | $260,984 | $258,869 | $253,058 |
| Total Land Value | $14,285 | $14,285 | $14,285 | $14,285 | $14,285 | $14,285 |
| Total Property Value | $301,915 | $288,051 | $282,685 | $275,269 | $273,154 | $267,343 |
| Special Use Appraisal | $0 | $0 | $0 | $0 | $0 | $0 |
| Cap Loss | $0 | $0 | $0 | $0 | $0 | $0 |
| Net Assessed Value | $301,915 | $288,051 | $282,685 | $275,269 | $273,154 | $267,343 |

*Please contact your Appraisal District for more information on the valuation method used to arrive at your appraised value.

## Buildings

### Building # 1, Section # 1, REAL ESTATE - MAIN, BRICK

| Type | Style | Heated Sq Ft | Repl Cost New | YrBlt | WAY | Other % Dpr | Normal % Dpr | % Cond | Value |
|---|---|---|---|---|---|---|---|---|---|
| BR6MC | M01 | 2079 | $282,848 | 2011 | 2011 | 100.00% | 10.00% | 90.00% | $254,563 |

#### Structural Elements

| Type | Description | Code | Details |
|---|---|---|---|
| EW | Exterior Walls | BV | BRICK/STONE/STUCCO VENEER |
| FN | Foundation | SL | CONCRETE SLAB |
| RC | Roofing | CS | COMP SHINGLES |
| IF | Flooring | STD | CARPET/TILE/WOOD/CONCRETE STAIN |
| FG | HVAC | HVAC | CENTRAL AIR AND HEAT IN THE MAIN IMPROVEMENT |

#### Sub Areas

| Type | Gross Area | Percent of Base | Adjusted Area |
|---|---|---|---|
| RE_MAIN | 2,079 | 100% | 2,079 |

### Building # 1, Section # 2, BR6C - COV PATIO, BRICK

| Type | Style | Heated Sq Ft | Repl Cost New | YrBlt | WAY | Other % Dpr | Normal % Dpr | % Cond | Value |
|---|---|---|---|---|---|---|---|---|---|
| BR6C | M01 | 108 | $3,369 | 2011 | 2011 | 100.00% | 10.00% | 90.00% | $3,032 |

#### Structural Elements

| Type | Description | Code | Details |
|---|---|---|---|
| EW | Exterior Walls | | UNASSIGNED |

#### Sub Areas

| Type | Gross Area | Percent of Base | Adjusted Area |
|---|---|---|---|
| BR6C | 108 | 100% | 108 |

### Building # 1, Section # 3, BR6C - COV PATIO, BRICK

| Type | Style | Heated Sq Ft | Repl Cost New | YrBlt | WAY | Other % Dpr | Normal % Dpr | % Cond | Value |
|---|---|---|---|---|---|---|---|---|---|
| BR6C | M01 | 78 | $2,433 | 2011 | 2011 | 100.00% | 10.00% | 90.00% | $2,190 |

#### Structural Elements

| Type | Description | Code | Details |
|---|---|---|---|
| EW | Exterior Walls | | UNASSIGNED |

#### Sub Areas

| Type | Gross Area | Percent of Base | Adjusted Area |
|---|---|---|---|
| BR6C | 78 | 100% | 78 |

### Building # 1, Section # 4, BR6A - RESIDENCE ATTC GAR, BRICK

| Type | Style | Heated Sq Ft | Repl Cost New | YrBlt | WAY | Other % Dpr | Normal % Dpr | % Cond | Value |
|---|---|---|---|---|---|---|---|---|---|
| BR6A | M01 | 400 | $23,480 | 2011 | 2011 | 100.00% | 10.00% | 90.00% | $21,132 |

#### Structural Elements

| Type | Description | Code | Details |
|---|---|---|---|
| EW | Exterior Walls | | UNASSIGNED |

#### Sub Areas

| Type | Gross Area | Percent of Base | Adjusted Area |
|---|---|---|---|
| BR6A | 400 | 100% | 400 |

## Land Lines

| Code | Description | Zone | Front | Depth | Units | Unit Type | Rate | Acreage | Total Adj | Value |
|---|---|---|---|---|---|---|---|---|---|---|
| RES | RESIDENTIAL | EC1 | .00 | .00 | 5,601.82 | SF | $2.55 | 0.13 | 1.00 | $14,285 |

## Personal Property

None

## Notices of Value

2026
2025
2024

EXHIBIT "C"

## Disclaimer

The preliminary values listed above are a work in progress and are not certified as official.