IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MAXWELL STERLING JENSEN, et. al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 25-CR-04750-MIS |

**UNITED STATES' RESPONSE TO DEFENDANT JENSEN'S OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT**

The United States hereby submits this response to defendant Jensen's Objections to the Presentence Investigation Report. Doc. 272. This Court should deny in part and grant in part the defendant's objections.[1]

## I. PROCEDURAL BACKGROUND

The defendant and the Government entered into a plea agreement in this case. The defendant pleaded guilty to Count 1 of the Superseding Indictment, through which he was charged with Conspiracy to commit Interstate Transportation of Stolen Property, in violation of 18 U.S.C. §§ 371 and 2314, a Class A felony. Nothing in this response should be interpreted by the Court as the Government encouraging the Court to do anything but accept the plea agreement. The Government stands by the terms of the plea agreement.

Pursuant to the plea agreement, the Government and the defendant agree, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentencing in the range of 12 to 24 months'

1 The Government has received and reviewed Probations Addendum to the Presentence Report filed on July 14, 2026. Doc. 274. The Government recognizes that its objections to the PSR are addressed in the addendum, but files this response for the record.

imprisonment is the appropriate disposition of this case. The Government and the defendant further agree that the sentence given in this case should run concurrently with any sentence received in *United States v. Jensen, et al.*, Criminal Action No. 1:25-cr-257, which is currently pending in the United States District Court, Southern District of Texas, Brownsville Division, or any other prosecution arising from or related to the same facts underlying this prosecution.

The parties further agreed that the amount of restitution to be imposed as part of any sentence in this case will be limited to $350,000, with the defendant and other co-defendants being held jointly and severally liable for said amount. This plea agreement is contingent upon the Court's acceptance of same, under Federal Rule of Criminal Procedure 11(c)(1)(C). Should this Court reject the plea agreement, neither the Government nor the defendant would be bound by the terms and conditions of the plea agreement.

## II. FACTUAL BACKGROUND

The instant offense involves a criminal enterprise engaged in the theft and storage of crude oil within the District of New Mexico and the subsequent sale across state lines into Texas.[2] The investigation was initiated on June 18, 2025, when an FBI Special Agent assigned to the Midland, Texas, office was contacted by a civilian who was concerned that he was being asked to be involved in dealing in stolen crude oil. This civilian eventually became a confidential source of information and will be referred to hereafter as "CS". The CS revealed that the defendant was orchestrating an illicit scheme to purchase and resell stolen crude oil in area of Midland, Texas. The CS indicated that it became clear that the defendant was encouraging him to purchase pure

2 The factual background is gleaned from paragraphs 12 thorough 34 of the Revised Presentence Investigation Report ("PSR"). Doc. 269.

crude oil from illegal sources (i.e., stolen oil) and to claim that it was waste oil. The stolen oil would then be resold as pure oil.

Not wanting to participate in this criminal activity, the CS repeatedly made excuses as to why he could not have stolen oil delivered to the defendant's storage yard in Midland, Texas. The defendant then suggested that the CS encourage the sources of the stolen oil to deliver their loads to other storage yards in Carlsbad, New Mexico. One of these yards was the commercial yard and storage facility located at 4154 7 Rivers Highway, Carlsbad, New Mexico (hereinafter "the 7 Rivers facility"). The 7 Rivers facility was leased by Hound Dog Energy, LLC. Thomas Rees was the owner and operator of Hound Dog Energy, LLC. The defendant exhibited knowledge of the daily operations of the 7 Rivers facility. For example, the defendant informed the CS that the 7 Rivers facility was receiving approximately 600 barrels of stolen crude oil per day. Additionally, the defendant was involved in the hiring process of Hound Dog Energy's sole employee, Christopher Ortega. Finally, the defendant told the CS that if oil was delivered to that facility, he would have to pay 25% of the illicit profits generated to Rees.

Further investigation revealed financial connections between the defendant and Hound Dog Energy. Specifically, businesses owned and operated by the defendant transferred significant amounts of capital to Hound Dog Energy. Between March 12, 2025, and April 23, 2025, two of the defendant's "corporate accounts, Big Hog Energy and Big Striker Energy… deposited a combined total of $195,750.00 ($18,400.00 from Big Hog Energy and $177,350.00 from Big Striker Energy) into [Hound Dog's] account." PSR ¶ 15. Additionally, two of the three frac tanks used to store the stolen oil were owned by Hound Dog Energy. On August 21, 2025, the defendant coordinated a meeting between the CS, Thomas Rees and Christoper Ortega at the 7 Rivers facility. The reason for this meeting was to convince the CS's source of stolen oil to deliver a load of stolen

oil and future loads of stolen oil to the 7 Rivers facility. The CS's source was fictitious and thus no oil was delivered.

## III. ARGUMENT

### a. The PSR correctly applies the enhancement for being in the business of receiving and selling stolen property.

The defendant argues the enhancement in paragraph 42 of the PSR does not apply because the defendant's involvement in this "conspiracy/scheme arose from a single crude-oil scheme spanning roughly five months… [and the PSR] describes Jensen as the financier of this one operation." Doc. 272 at 3. However, that argument is belied by the fact that this "one" scheme continued for several months and involved multiple loads per week of oil being stolen, stored and sold.

In addition to the defendant's personal conduct, he is responsible for the actions of his co-defendants that were within the scope of the criminal activity he agreed to undertake, were in furtherance of that activity, and were reasonably foreseeable to him through the Relevant Conduct provisions. *See* U.S.S.G. § 1B1.3. In the case of a "jointly undertaken criminal activity . . . whether or not charged as a conspiracy . . ." the defendant is responsible for "all acts and omissions of others that were—

(i) within the scope of the jointly undertaken criminal activity,

(ii) in furtherance of that criminal activity, and

(iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3. It is apparent from the facts of this case that the defendants used vacuum trucks to repeatedly steal oil from Plains All American Pipeline, transfer and store that oil at the 7 Rivers

facility and then resell it in Texas. The information shows that what the defendants did was within the scope of jointly undertaken criminal activity and that their actions were in furtherance of that activity. Moreover, the conduct was reasonably foreseeable to the defendant because he was personally involved in the illegal venture. This is simply not a case where the defendant can claim ignorance of the activities of the theft scheme when he actively participated in its origination and financing. Indeed, the evidence demonstrates not merely that Jensen knew of the broader operation, but that the repeated acquisition, storage, and resale of stolen oil fell within the criminal activity he agreed to undertake. The Court should overrule the defendant's objection.

b. The PSR incorrectly applies the enhancement for sophisticated means.

The defendant argues the enhancement in paragraph 43 of the PSR does not apply because "the execution of this offense was physically primitive. Vacuum trucks connected hoses to Plains All American Pipeline taps and pumped crude oil into frac tanks." Doc. 272 at 4. Although this argument is factually accurate, it ignores another proposition put forth by Probation; namely that the defendant and his co-defendants used shell corporations to hide capital transactions related to the theft scheme. The distinction between shell corporations and legitimate companies seems to be at the core of this argument. The defendant argues that these were not shell corporations, but legitimate corporations involved in the oil business. However, the relevant question is whether Jensen intentionally used the entities to conceal assets or transactions through especially complex or intricate means, not merely whether the entities conducted some legitimate business. While it would be helpful if the defendant provided evidence that his corporations conducted other business besides that which was related to this case, such a a lack of evidence does not necessarily equate to these being shell corporations. Accordingly, the Government objects to the imposition of this enhancement.

c. The PSR correctly applies the enhancement for being a Manager or Supervisor in the Criminal Activity, but the enhancement should be reduced to 2-points.

The defendant objects to paragraph 45 of the PSR which applies an enhancement for the defendant being a manager or supervisor of the criminal activity. The United States Sentencing Guideline differentiates a mere participant from an organizer, leader, manager, or supervisor, in that "defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." *See* USSG § 3B1.1 cmt. N.2. The United States agrees with the defense that the defendant cannot be held responsible under this guideline for his managing the CS as the CS was not a participant. *See* USSG § 3B1.1 cmt. N.1. But the United States disagrees that there is insufficient evidence that the defendant was a manager or supervisor of at least one other participant.

First, the defendant appears to argue that Rees "directed the on-the-ground operation" not the defendant (Doc. 272, p. 6). However, "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." *See* USSG § 3B1.1 cmt. N.4. Thus, Rees' managerial role does not necessarily relieve the defendant of his culpability. Probation included statements by the defendant wherein he claimed that he and Rees were jointly operating the 7 Rivers Facility. *See*, PSR, ¶ 22. The reason that Rees was the legal owner of the 7 Rivers facility even though the defendant provided nearly all of the operating capital was also made clear by Probation in quoting a July 14, 2025, recorded phone call. Probation wrote, "The defendant detailed his efforts to shield his identity from asset documentation, stating, 'I just don't like to put my name on anything right now 'cause I'm... scrutiny I'm undergoing... his company named Hound Dog, I think, you know, you'll buy it and then you'll sell it to his company... just so there's more people in the mix'." *See*, PRS, ¶ 22. Rees and the defendant together qualify as managers or supervisors of this organization.

Probation enhanced the defendant's calculations by three levels because the criminal activity involved five or more participants or was otherwise extensive. This finding is supported by a simple reading of the superseding indictment, which lists defendant Jensen and seven co-defendants. However, the Government has no information that the three employees of Plains All American Pipeline had any contact with the defendant, Rees, or Ortega. Thus, a reasonable argument could be made that the Jensen/Rees criminal organization involved only three other participants: Chirstopher Ortega, Carlos Contreras and Christian Jesus Contreras-Varela. If the organization is viewed as such, the enhancement should be 2-levels, not 3-levels under USSG § 3B1.1(c).

The United States both agrees and disagrees with Probation on the aggravating role enhancement. The United States urges the Court to find that the defendant is "an organizer, leader, manager, or supervisor in any criminal activity other than described in subsection (a) or (b)" and thus the guideline be increased by 2 levels. *See*, USSG § 3b1.1(c).

d. <u>Defendant's request for a variance due to the Inflationary Guideline Adjustment.</u>

Defendant seeks a variance due to the expected inflationary guideline adjustment to USSG §2B1.1.3 The United States, first and foremost, encourages the Court to accept the plea agreement and sentence the defendant within its terms, and to the extent that this expected amendment leads to that result, the Government is not opposed.

## IV. CONCLUSION

Nothing in this response should be interpreted by the Court as the Government encouraging the Court to do anything but accept the plea agreement. The Government stands by the terms of

3 The Commission's promulgated inflation adjustment is scheduled to take effect on November 1, 2026. Although the amendment is not yet effective, the Court may consider the Commission's policy determination under 18 U.S.C. §3553(a)

plea agreement. As to the specific objections raised by the defense, the Government opposes in part and agrees in part. The defendant was a manager of a criminal organization that was in the business of receiving and selling stolen property. Thus, the enhancements under USSG §§ 2B1.1(b)(4) and 3B1.1(c) are appropriate. This organization did not use sophisticated means to commit the thefts, although the handling of the proceeds is less clear. Thus, the enhancement under § 2B1.1(b)(10)(C) should not be imposed. The United States Sentencing Commission is expected to amend § 2B1.1 to adjust for inflation which would necessitate a 10-level increase rather than a 12-level increase.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General
RYAN ELLISON
First Assistant United States Attorney

***/s/ Electronically filed on 7/14/26***
JAMES A. DICKENS
BENJAMIN T. SUSLAVICH
Assistant U.S. Attorneys
200 N. Church Street
Las Cruces, NM 88011
(575) 522-2304 - Tel.
(575) 522-2391 – Fax

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record on this date.

***/s/ Electronically filed on 7/14/26***
JAMES A. DICKENS
Assistant United States Attorney