**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **CAUSE NO. 5:25-cr-04750-MIS** |
| | § | |
| **MAXWELL JENSEN** | § | |

**DEFENDANT, MAXWELL JENSEN'S OBJECTION TO THE GOVERNMENT'S NOTICE OF RULE 404(B) EVIDENCE**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW, Defendant MAXWELL JENSEN,** by and through undersigned counsel, and respectfully objects to the Government's Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b), insofar as it seeks to introduce the anticipated testimony of Manuel Rodriguez ("Rodriguez") concerning a purported 2023–2024 "frac yard" scheme, and in support thereof, would show as follows:

## I. INTRODUCTION

1. Pursuant to its sealed Notice of Other Crimes or Bad Acts Pursuant to Rule 404(b), the Government identified what it labeled as a "prior conspiracy" between Defendant and co-defendants Rees and Contreras-Varela. *See Dkt. No. at Page 4.* The Government's notice describes Rodriguez as a witness who will testify that, in 2023, Jensen hired him to operate a "frac yard very similar in nature to the 7 Rivers facility. *See id.* That same notice claimed that that the two men "conspired to purchase stolen crude oil and resell it," and that Rodriguez continued working for Jensen "in various capacities" into 2024. *See id.* The Government offers this evidence under the same undifferentiated list it applies to every other item in its notice — intent, knowledge, identity, lack of mistake, and (as to Contreras-Varela) alienage — without explaining how Rodriguez's account, specifically, bears on any of those purposes for Jensen. That failure to

differentiate is not a drafting oversight; it reflects that the true relevance of the Rodriguez evidence is that it shows Jensen has, in the Government's telling, done this sort of thing before. That is precisely the propensity inference Rule 404(b) forbids.

2. As set forth below, the Rodriguez evidence independently fails each requirement of the *Diaz* framework the Government itself invokes. Specifically, said evidence is not offered for a genuinely proper, non-propensity purpose; nor is it sufficiently similar to or temporally proximate to the charged conspiracy to be relevant. Indeed, the Government's notice does not establish sufficient evidence that Jensen committed the acts described; and whatever marginal probative value remains is substantially outweighed by the danger of unfair prejudice. The Court should exclude this evidence, or, at minimum, conduct an evidentiary hearing before trial to test its foundation.

## II. THE PROFFERED EVIDENCE

3. According to the Government's notice, Rodriguez will testify that: (1) in 2023, Jensen hired him to run a frac yard "similar in nature" to the 7 Rivers facility; (2) the yard moved as much as $130,000 of oil per week at its peak; (3) Jensen paid Rodriguez for his participation; (4) Rodriguez met co-Defendant, Rees at the yard and understood from Jensen that Rees was doing "deals" as well; (5) Rodriguez saw Rees bring cash to the yard to pay drivers; and (6) Rodriguez continued working for Jensen "in various capacities" into 2024. *See id.* The notice further states that Rodriguez met a man he later identified as Christian Contreras-Varela at the yard, and that Rodriguez understood — apparently from his own impressions, not from any admission described in the notice — that Contreras-Varela was undocumented. *See id.*

4. The charged conspiracy in this case is alleged to have run from March 12, 2025, to August 22, 2025, and involved a specific and detailed manner and means. Specifically, the indictment

accues Jensen of bribing or inducing pipeline-company employees to permit theft, extracting crude oil from an operating Plains All American pipeline using vacuum trucks, storing the oil at the 7 Rivers facility, and selling it interstate. *See id.* Tellingly, no comparable detail concerning method appears anywhere in the Government's description of the Rodriguez frac yard.

## III. LEGAL STANDARD

5. Federal Rule of Evidence 404(b)(1) prohibits the use of a prior crime, wrong, or act to prove a person's character in order to show that, on a particular occasion, he acted in conformity with that character. *See* FED. R. EVID. 404(b)(1). The Tenth Circuit applies the four-part test first articulated in by the United States Supreme Court in *Huddleston v. United States* to determine the admissibility of this extrinsic evidence: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination whether the probative value of the evidence is substantially outweighed by its potential for unfair prejudice; and (4) the court, upon request, must give a limiting instruction. *See United States v. Diaz*, 679 F.3d 1183, 1190 (10th Cir. 2012); *see also*. *Huddleston v. United States,* 485 U.S. 681 (1988);

6. The consideration of relevance under the second prong turns on the similarity of the prior act with the charged offense, including their temporal proximity to each other. Uncharged acts are admissible only if they are both similar to the charged crime and sufficiently close in time. *See United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000); *see also United States v. Mares*, 441 F.3d 1152, 1159 (10th Cir. 2006) (the weight given to temporal distance depends on the facts of each case, but remoteness – both in time and in geographical location - diminishes probative value absent evidence of a regular or continuous pattern); *United States v. Brooks*, 736 F.3d 921, 940 (10th Cir. 2013). Additionally, before admitting Rule 404(b) evidence, the district court must

determine that the jury could reasonably find, by a preponderance of the evidence, that the defendant committed the extrinsic act. *See Huddleston*, 485 U.S. at 690; FED. R. EVID. 104(b).

7. Finally, the Tenth Circuit has repeatedly cautioned that a prosecutor's invocation of the Rule 404(b)(2) list does not, by itself, satisfy the proper-purpose requirement, because a prosecutor's “actual purpose” in offering other-acts evidence is often to prove the defendant's propensity to commit the crime. Evidence should be admitted only for purposes other than “that which tends to prove only criminal disposition.” *See United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001).

## IV. ARGUMENT

### A. The Rodriguez Evidence Is Offered for an Improper, Propensity-Based Purpose.

8. The Government's notice recites the full Rule 404(b)(2) list — intent, knowledge, identity, lack of mistake or accident — as a single, undifferentiated basis for admitting every category of prior-act evidence described in its filing, including the Rodriguez testimony. *See Dkt. No. 217 at Page 1.* Contained within its Notice, the Government argues that said evidence of the alleged conspiracy detailed by Rodriguez would go to show that the “the parties were not mistaken or unaware of the ownership of the oil they were purchasing and selling.” *See id. at Page 5.*

9. In its attempt to argue for the admissibility of said prior, uncharged acts, the Government attempts to connect Defendant’s actions in 2025 to what Rodriguez claims occurred in 2023. The Government's own notice acknowledges that, in the current case, the relevance of Jensen's absence from the 7 Rivers facility, and his reasons for directing others by phone, is addressed by the SOI's direct testimony about Jensen's own statements during the charged conspiracy — not by evidence of a separate scheme two years earlier. Nothing in the Rodriguez proffer speaks to identity in any way that the SOI evidence does not already independently establish. And to the extent the

Government intends the Rodriguez testimony to show that Jensen knew the oil moving through the 7 Rivers facility was stolen, that inference depends entirely on the jury first accepting the premise that Jensen has run this kind of operation before — which is the propensity inference *Tan* warns against, not a permissible knowledge inference.

10. Moreover, the Government attempts to boot-strap the admissibility of the Rodriguez testimony by arguing that said testimony would be admissible under a proper purpose in order to prove "an essential element" of the criminal charges against co-Defendant, Contreras-Varela. *See Dkt. No. 217 at Page 6.* However, said argument is moot, as Contreras-Varela is not being tried with Defendant, Jensen, having already pleaded guilty to the Superseding Indictment on June 11, 2026. *See Dkt. No. 263.*

**B. The Rodriguez Evidence Is Neither Sufficiently Similar to Nor Sufficiently Proximate in Time to the Charged Conspiracy to Be Relevant**.

11. **Temporal remoteness.** The charged conspiracy began on or about March 12, 2025. The Rodriguez scheme is alleged to have run from 2023 into 2024 — a gap of, at minimum, over a year between the end of the conduct Rodriguez describes and the start of the charged conduct, and closer to two years from its inception. The Government's own authority illustrates the problem: in *Cardinas Garcia*, the prior act the Tenth Circuit found relevant occurred approximately one month before the charged conduct. *See United States v. Cardinas-Garcia,* 596 F.3d 788, 797–98 (10th Cir. 210). No comparable proximity exists here, given that the uncharged acts alleged by Rodriguez occurred nearly a year or two, allegedly, prior to the allegations now before this Court. Under *Mares*, also cited by the Government in its notice, the significance of a temporal gap depends on the unique facts of the case. *See United States v. Mares,* 441 F.3d 1152, 1157 - 1159. But where, as here, the Government's notice does not allege any regular or continuous course of conduct bridging 2024 to March 2025, the gap weighs against, rather than for, admission. In its

Notice, the Government again attempts to connect the ongoing criminal matter in the Southern District of Texas to the case at bar, claiming that "The conspiracy charged in the Southern District of Texas was only stopped by Jensen's arrest in April of 2025. The conspiracy involving Rodriguez was from 2023 to 2024. The conspiracy involving the SOI overlapped with the current case." *See Dkt. No. 217 at Page 7.* The notice does not claim Jensen was engaged in any oil-related scheme during the intervening period; it simply skips from "2023 to 2024" to the charged conduct beginning in March 2025, nor does it link or provide any similarity between any of the alleged conduct involving Rodriguez, the alleged activities brought in the Southern District of Texas, or the case at bar.

12. **Dissimilarity.** Moreover, the Government's notice does not allege that the Rodriguez frac yard operation involved the specific manner and means charged here: inducing pipeline-company employees to commit theft, extracting oil from an operating pipeline with vacuum trucks, or storing stolen product at a dedicated facility for interstate resale. The notice describes only that the yard "moved" stolen oil and that Jensen paid Rodriguez and others in cash. General similarity of subject matter — stolen oil changing hands for money — is not the kind of specific, distinctive similarity of method that the Tenth Circuit requires to make an uncharged act probative of intent or knowledge as to a different, later scheme. *See Zamora*, 222 F.3d at 762-763. As of this filing, other than the vague Notice detailing Rodriguez's testimony, there is no corroborating evidence or testimony offered by the Government which would prove the similarity between the acts described by Rodriguez on one hand, and the criminal conduct alleged in the case at bar on the other.

### C. The Government's Notice Does Not Establish Sufficient Evidence Under *Huddleston* That Jensen Committed the Rodriguez-Era Acts.

13. The Government's notice identifies a single source — Rodriguez himself — for the entirety of the proffered 2023–2024 conduct. No financial records, no corroborating witness, and no

documentary evidence of any kind is described in the notice. While an uncorroborated witness's account can, in some circumstances, satisfy Rule 104(b), the Court cannot make that preliminary determination on the present record. Defendant respectfully requests that, before any ruling admitting this evidence, the Court conduct an evidentiary hearing to permit the defense to test the foundation and reliability of Rodriguez's anticipated testimony.

**D. Any Probative Value Is Substantially Outweighed by the Danger of Unfair Prejudice Under Rule 403.**

14. Even accepting the Government's characterization of the Rodriguez evidence at face value, its probative value on any genuinely disputed issue in this case is marginal at best, for the reasons stated above. Against that minimal value, the risk of unfair prejudice is substantial. The Government's own trial theory in this case rests on direct evidence: over thirty alleged overt acts, dozens of specific financial transfers into and out of Hound Dog Energy, and the SOI's first-hand account of Jensen's own statements during the charged period. Against that backdrop, introducing a separate, uncharged scheme from years earlier adds little except to invite the jury to conclude that Jensen is simply the kind of person who runs stolen-oil operations — exactly the inference Rule 403 and Rule 404(b) exist to prevent. *See Tan*, 254 F.3d at 1211–12 (evidence is unfairly prejudicial where it provokes an emotional response or otherwise affects the jury's attitude toward the defendant apart from the charged offense). Moreover, absent any other corroborating evidence or testimony, by and through Rodriguez's testimony, the Government is seeking to introduce extrinsic evidence of bad acts based ***solely*** on the testimony of an individual not involved in the case at bar, and whose motivations for testifying accordingly are unknown. Undoubtedly, the probative value of Rodriguez's testimony would be substantially outweighed by the danger of unfair prejudice as to Defendant, Jensen.

15. A limiting instruction cannot cure this risk. Where, as here, the only real connection between the prior act and the charged offense is that both involve Jensen and stolen oil, an instruction telling the jury not to consider the evidence as proof of character asks the jury to draw a distinction that the evidence itself does not support.

**PRAYER**

**WHEREFORE, PREMISES CONSIDERED, Defendant, MAXWELL JENSEN** respectfully requests that this Court exclude the anticipated testimony of Manuel Rodriguez under Federal Rules of Evidence 404(b) and 403, or, in the alternative, set an evidentiary hearing prior to trial to determine the admissibility and foundation of this evidence outside the presence of the jury.

Respectfully submitted,

*/s/ Brock Benjamin*

BROCK BENJAMIN
Attorney for Defendant
New Mexico Bar No. 141535
1013 E. San Antonio Ave.
El Paso, Texas 79901
Tel: 915-412-5858
Fax: 915-503-2224
E-Mail: brock@brockmorganbenjamin.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this the 14th day of August, 2026, I electronically transmitted the attached document to the Clerk’s Office using the CM/ECF system for filing and service to all CM/ECF registrants.

s/ *Brock Benjamin*

BROCK BENJAMIN

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that on this the 14th day of August, 2026, Defense counsel communicated with the Government, who indicated that it was OPPOSED to the granting of a continuance in this matter.

s/ *Brock Benjamin*___________________
BROCK BENJAMIN