IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>**MAXWELL STERLING JENSEN, et. al.**<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | NO. 25-CR-4750-MIS |

**UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The United States hereby submits its proposed findings of fact and conclusions of law concerning Defendant Christopher Ortega's bench trial held from August 19 to 21, 2026. For the reasons below, the United States respectfully requests that the Court find that Defendant Christopher Ortega is guilty of Counts 1, 5, and 9.

## I. PROPOSED FINDINGS OF FACT

1. In March or April of 2025, Obed Lopez was recruited by a man to permit thefts of crude oil from Plains All American Pipeline (PAAP). Lopez agreed to assist in these thefts and recruited German Ortiz-Santillano and Samuel Cardona-Quezada (hereinafter the PAAP Employees). Tr. of Trial – 1, pp. 47-49, 50-52.[1]

2. The thefts always occurred in the same general manner. The PAAP Employees were contacted and agreed upon a meeting location. A white vacuum tanker met them, and they traveled to a riser location on the PAAP pipeline. The PAAP employees permitted and assisted

[1] The United States has received the Transcripts for the bench trial and has attached them to this pleading as "Tr. of Trial – 1" (the transcript from Day 1), "Tr. of Trial – 2" (the transcript from Day 2), "Tr. of Trial – 3" (the transcript from Day 3). The exhibits entered at trial are referred to as "Exhibit __".

the men operating the white vacuum tanker to connect to the pipeline. Tr. of Trial – 1, pp. 49-52, 62-65. See also Exhibits 4-6 and 70-75.

3. They would remove crude oil directly from the pipeline. The Basic Sediment and Water (BS&W) of the crude oil in the pipeline was under 0.5%, meaning it was high quality or pure oil. Each time, the white vacuum tanker would take approximately 130 barrels of oil. Id.; Tr. of Trial – 1, pp. 29, 32, 35, 37, 44; Tr. of Trial – 2, pp. 97–98.

4. The same vacuum tanker was used for each theft. The vacuum tanker was marked with "MIS LLC" on the doors. Tr. of Trial – 1, p. 64; Tr. of Trial – 2, pp. 64–65. See, also Exhibits 35-37.

5. These thefts occurred in New Mexico. Tr. of Trial – 1, p. 53

6. After the oil thefts, the MIS LLC vacuum tanker was repeatedly observed (by agents and by electronic tracking devices) traveling back to a yard located at 4154 7 Rivers Highway, Carlsbad, Eddy County, New Mexico (7 Rivers yard). Tr. of Trial – 2, pp. 63–65, 67–68, 74–77.

7. Agents repeatedly observed the MIS LLC vacuum tanker connect to one of the three frac tanks at the 7 Rivers yard. The MIS LLC vacuum tanker appeared to be delivering the stolen oil to the 7 Rivers yard. Tr. of Trial – 1, p. 85-88, 93-95; and Tr. of Trial – 2, pp. 65–68, 73–74. See, also Exhibits 9–13.

8. The agents observed oil haulers connect to the same tanks and appear to draw oil from the tanks. Tr. of Trial – 1, pp. 86–95, 96–99, Tr. of Trial – 2, p. 70. See, also Exhibits 7–8.

9. On July 25, 2025, two oil haulers were followed taking oil from the 7 Rivers yard. The oil haulers drove from Carlsbad, New Mexico to a LACT station near Pecos, Texas. They were observed hooking up to a LACT station and appeared to deliver crude oil. LACT stations

only accept crude oil with low BS&W. Tr. of Trial – 1, pp.35-37; Tr. of Trial – 2, pp. 4–10 (Sneathen); 70–72 (Boone). See, also Exhibits 41–42.

10. The 7 Rivers yard was operated by Hound Dog Energy (HDE). HDE had one founding member, Thomas Rees. Thomas Rees was also the only person listed as being able to conduct financial transactions from the companies banking account. Tr. of Trial – 2, p. 136; Tr. of Trial – 3, pp. 7–9. See also, Exhibits 54, 56, and 59.

11. Between March 12, 2025, and April 23, 2025, HDE received approximately $180,800.00 from two businesses, Big Striker Energy and Big Hog Energy.[2] Tr. of Trial – 3, p. 15-20. See also, Exhibits 55 – 58 and 76.

12. The financial records for both of these businesses indicate that they are controlled by Maxwell Sterling Jensen. Tr. of Trial – 3, pp. 9–14, 18. See also, Exhibits 61–64.

13. Jensen and Rees are "best friends," having known each other since elementary school. Rees had no knowledge of the oil business before he started working for Jensen in 2023. In early 2025, Jensen convinced Rees to establish HDE. Jensen used HDE to operate an oil business without Jensen's name being openly connected with the business. The initial yard for HDE was south of Carlsbad. Tr. of Trial – 3, pp. 36, 41–44. See also, Exhibit 44 and 44a, pp. 21-23.

14. In April of 2025, Jensen was arrested on federal charges related to illegal oil importation and transporting stolen oil across state lines. Rees shutdown the HDE yard south of Carlsbad and left the state of New Mexico. Tr. of Trial – 3, pp. 36, 43–44. See also Exhibits 34, 34a, pp. 3-4, 44, 44a, pp. 22 and 79.

---

[2] An additional $15,000.00 payment was made by Big Striker Energy on June 18, 2025.

15. Jensen was released on pretrial conditions and convinced Rees to reopen HDE. Rees traveled back the New Mexico and opened the 7 Rivers yard. Id.

16. The majority of the funding to reopen HDE came from Jensen's businesses as described above. Jensen also provided frac tanks for HDE. Tr. of Trial – 2, pp. 43–46, 49; Tr. of Trial – 3, pp. 16–20. See also, Exhibits 33, p. 4, 33, p. 10 and 52, p. 1; Exhibit 76, p. 20.

17. In June of 2025, Jensen placed an ad on Indeed for a yard manager for HDE. Christopher Ortega applied. Tr. of Trial – 3, pp. 57–58, 93. Exhibits 44 and 44a, pp. 2–3.

18. Ortega had experience in the oil business, having previously worked as a pumper for 4 to 5 years. With this experience, Ortega could recognize "good" oil from "bad" oil. He understood the different roles and capabilities of vacuum trucks and oil haulers. He understood that very little clean oil could be extracted from waste oil. Tr. of Trial – 3, pp. 53-54, 74. See also, Exhibits 44 and 44a, pp. 16-21.

19. Jensen interviewed Ortega and then recommended that Rees hire Ortega. Rees hired and trained Ortega to operate the 7 Rivers yard. Tr. of Trial – 3, p. 58. Exhibits 44 and 44a, pp. 2-3.

20. Ortega started working on or about June 22, 2025. After a few weeks, Rees left New Mexico and Ortega was responsible for the daily operation of the 7 Rivers yard. Tr. of Trial – 3, pp. 58 and 75. Exhibits 44, 44a, p. 13, and 48.

21. Ortega was responsible for documenting every load of oil that entered and left the 7 Rivers yard. He created the load tickets for the incoming oil. Tr. of Trial – 3, pp. 61 and 76. Exhibits 44 and 44a, p. 2.

22. Ortega was aware that over 90% of the oil coming into the 7 Rivers yard was from the MIS LLC vacuum tanker, which was operated by Carlos Contreras. Tr. of Trial – 2, pp. 121–125; Tr. of Trial – 3, pp. 61–62 and 76.

23. He received load tickets for every outgoing load of oil. He witnessed the oil haulers test the oil before they accepted the oil. Tr. of Trial – 2, pp. 102–103. Exhibits 44 and 44a, pp. 15–16.

24. Ortega knew that HDE did nothing to purify the oil. Thus, Ortega knew that the oil coming into the yard and going out of the yard was extremely low in BS&W. Tr. of Trial – 3, p. 78–79.

25. The HDE load tickets document the following information related to July 30, 2025:[3]

| Ticket # | Date/Time | Transport | Driver | Total Bbls: | BS&W | Operator |
|---|---|---|---|---|---|---|
| 148 | 7/30/2025 at 1000 hours | MIS LLC | Carlos | 131 | .1 | Chris |
| 148 | 7/30/2025 at 1800 hours | MIS LLC | Carlos | 139 | .1 | Chris |
| 148 | 7/30/2025 at ____ hours | MIS LLC | Carlos | 141 | .1 | Chris |

These load tickets are Exhibit 49, pp. 5 – 7; see also Tr. of Trial – 2, pp. 82–83, 122–124.

26. The HDE load tickets document the following information related to August 21, 2025:[4]

| Ticket # | Date/Time | Transport | Driver | Total Bbls: | BS&W | Operator |
|---|---|---|---|---|---|---|
| 183 | 8/21/2025 at 1000 hours | MIS | Carlos | 138 | .1 | Chris |
| 184 | 8/21/2025 at 1330 hours | MIS | Carlos | 143 | .1 | Chris |

[3] Count 5 of the Superseding Grand Jury Indictment alleges that Christopher Ortega added and abetted in the transportation of stolen good in interstate commers on July 30, 2025.

[4] Count 9 of the Superseding Grand Jury Indictment alleges that Christopher Ortega added and abetted in the transportation of stolen good in interstate commers on August 21, 2025.

27. These load tickets are Exhibit 49 p. 40 and 41.

28. In the summer of 2025, the market value for crude oil with a low BS&W was approximately $67 to $68 per barrel according to the West Texas Intermediate. Tr. of Trial – 1, p. 37. Thus, on July 30, 2025, HDE received over $27,000.00 worth of stolen crude oil. On August 21, 2025, HDE received over $18,000.00 worth of crude oil.

29. Load tickets from 9G Energy document that oil was picked up from HDE at the 7 Rivers yard and transported into Texas. These tickets were collected and saved by Ortega as part of his employment at HDE. Tr. of Trial – 3, p. 79-80. See also, Exhibits 44 and 44a p. 14.

30. These tickets document the following:

| Date | Gross Barrels | BS&W | Destination |
|---|---|---|---|
| 7/26/2025 | 83.80 | 0.1 | Andrews, TX |
| 7/26/2025 | 97.00 | 0.1 | Andrews, TX |
| 7/26/2025 | 182 | 1 | Andrews, TX |
| 7/29/2025 | 172.84 | 0.1 | Andrews, TX |
| 7/31/2025 | 195.5 | | |
| 7/31/2025 | 60 | 0.1 | Andrews, TX |
| 7/31/2025 | 130.3 | 0.1 | Andrews, TX |
| 7/31/2025 | 190 | 0.1 | Andrews, TX |
| 8/1/2025 | 192 | 0.1 | Martin, TX |
| 8/1/2025 | 187.35 | 0.1 | Andrews, TX |
| 8/2/2025 | 196 | 0.1 | |
| 8/2/2025 | 190 | 0.1 | Andrews, TX |
| 8/7/2025 | 168.01 | 0.1 | Andrews, TX |
| 8/8/2025 | 5 | 1 | Martin, TX |
| 8/8/2025 | 28.6 | 0.1 | Martin, TX |
| 8/9/2025 | 187.58 | 0.1 | Andrews, TX |
| 8/9/2025 | 191.57 | 0.1 | Andrews, TX |
| 8/12/2025 | 185 | 0.1 | Martin, TX |
| 8/12/2025 | 191.3 | 0.1 | Martin, TX |
| 8/13/2025 | 187.22 | 0.1 | Martin, TX |
| 8/13/2025 | 189.96 | 0.5 | Andrews, TX |
| 8/14/2025 | 183 | 0.1 | Martin, TX |
| 8/14/2025 | 194.49 | 0.1 | Martin, TX |
| 8/14/2025 | 193.2 | 0.5 | Martin, TX |
| 8/15/2025 | 192.2 | 0.1 | Andrews, TX |
| 8/16/2025 | 192.2 | 0.1 | Andrews, TX |

| | | | |
|---|---|---|---|
| 8/17/2025 | 190 | 0.1 | Andrews, TX |
| 8/19/205 | 30 | 0.1 | Andrews, TX |
| 8/19/2025 | 90 | | Andrews, TX |

31. According to the load tickets, from June 24, 2025 to August 19, 2025, Caribou Energy / 9G transported approximately 4,475 barrels from the 7 Rivers yard to Texas andpaid HDE $362,873. Tr. of Trial – 3, p. 19. See also, Exhibits 55 – 58 and 76.

32. Ortega was aware that HDE was paying Contreras $35 per barrel. He was aware that thiswas considerably below the market rate. Furthermore, he was aware that within hours or at most a few days, HDE sold that oil for $55 per barrel. Tr. of Trial – 2, p. 99; Tr. of Trial – 3, pp. 79–81. See also, Exhibits 44 and 44a, p. 7.

33. On August 21, 2025, Ortega and Rees met with Stuart Dollar. Both men knew that Dollar was an employee of Jensen. They knew that Dollar managed Jensen's oil yard in Odessa, Texas. Tr. of Trial – 2, pp. 11–14, 17, 47–50; Tr. of Trial – 3. pp. 45–47, and 89–90. See also, Exhibit 34 and 34a.

34. Dollar claimed to have a source of oil that was going to deliver 180 barrels of oil that day. Dollar claimed that the ultimate source of oil was a pumper working for Diamondback. Diamondback is an oil company. Tr. of Trial – 2, pp. 38, 47, 52. See also, Exhibit 34 and 34a, pp. 1–3.

35. A pumper for Diamondback would not be permitted or authorized to sell, give, or redirect 180 barrels of oil to the 7 Rivers yard. Tr. of Trial – 1, p. 31–32.

36. Rees, Ortega and Dollar talked about not looking like a "Fed" (federal agent) when Hugo arrived. Tr. of Trial – 2, pp. 40–41; Tr. of Trial – 3. pp. 47-49. See also, Exhibit 34 and 34a, p. 1-3.

37. Rees and Ortega were each aware of a high probability that Dollar's oil was stolen. Despite this awareness, Ortega indicated his willingness to accept the oil. Tr. of Trial – 2, pp. 52–55, 108–110. See Exhibit 34 and 34a.

38. Ortega acknowledged that he knew about Jensen's federal arrest for illegal oil transportation. Additionally, he recognized that this arrest was the reason that people did not want to deliver oil to his yard in Odessa. Tr. of Trial – 2, pp. 52–53, 55, 101–102; Tr. of Trial – 3, pp. 44–47 and 89–90. See also, Exhibit 34, 34a, pp. 1–3, 44 and 44a, pp. 21–22.

39. Ortega recognized that Jensen was actively participating in running the HDE business. Tr. of Trial – 2, pp. 100–102, 112; Tr. of Trial – 3, pp. 89–91. See also, Exhibit 44 and 44a, pp. 12, 21-22.

40. After his arrest, Ortega voluntarily waived his right to remain silent and to counsel. He submitted to an interview by law enforcement. Tr. of Trial – 2, pp. 95–96; Tr. of Trial – 3, pp. 70–71. See, Exhibit 44 and 44a.

41. In this interview, Ortega repeatedly stated that he recognized that the oil being brought in by Contreras was too pure (low in BS&W) and in too great of volume to come from waste oil. With this knowledge, Ortega continued to work at the 7 Rivers yard, accepting loads of oil from Contreras and permitting 9G to purchase loads for transport to Texas. Tr. of Trial – 2, pp. 96–99, 105–106, 111; Tr. of Trial – 3, p. 88. See also, Exhibit 44 and 44a, pp. 23–26, 38.

42. Likewise, on cross examination, Ortega admitted that on or about August 11, 2025, he knew that there was a high likelihood that the oil brought into the 7 Rivers yard by Contreras was stolen. With this knowledge, Ortega continued to work at the 7 Rivers yard, accepting loads of oil from Contreras and permitting 9G to purchase loads for transport to Texas. Tr. of Trial – 3,

p. 86-87. The oil brought into the 7 Rivers yard after this date was transported to Texas and was valued well in excess of $5,000.00.

## II. PROPOSED CONCLUSIONS OF LAW

Per the Tenth Circuit Pattern Jury Instructions Criminal 2.82 (2011), in order for Ortega to be found guilty of Interstate Transportation of Stolen Goods contrary to 18 U.S.C. §§2314 and 2, as charged in Counts 5 and 9 of the Superseding Grand Jury Indictment [Doc. 111], the United States must prove beyond a reasonable doubt that:

First: he caused to be transported in interstate commerce stolen crude oil;

Second: at the time of such transportation, the defendant knew that the crude oil had been stolen and

Third: the crude oil had a value of $5,000 or more.

Ortega was charged as having aided or abetted in the interstate transportation of the stolen crude oil. "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." See, 18 U.S.C. § 2. The United States must prove that (1) Every element of the charged crime was committed by someone other than the defendant and that (2) The defendant intentionally associated himself in some way with the crime and intentionally participated in it as he would in something he wished to bring about. This means that the government must prove that the defendant consciously shared the other person's knowledge of the underlying criminal act and intended to help him. Tenth Circuit Pattern Jury Instructions Criminal 2.06 (2021 Ed., Updated April 2, 2021).

Per the Tenth Circuit Pattern Jury Instructions Criminal 1.37 (2021 Ed., Updated April 2, 2021), when the word "knowingly" is used in these charges, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the

part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant deliberately blinded himself to the existence of a fact. Knowledge can be inferred if the defendant was aware of a high probability that the crude oil was stolen or unlawfully possessed, unless the defendant did not actually believe that the crude oil was stolen or unlawfully possessed.

Per the Tenth Circuit Pattern Jury Instructions Criminal 2.19 (2011) in order for Ortega to be found guilty of Conspiracy to Commit Interstate Transportation of Stolen Goods contrary to 18 U.S.C. § 371, as charged in Count 1of the Superseding Grand Jury Indictment [Doc. 111], the United States must prove beyond a reasonable doubt that:

First: the defendant agreed with at least one other person to violate the law;

Second: one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

Third: the defendant knew the essential objective of the conspiracy;

Fourth: the defendant knowingly and voluntarily participated in the conspiracy; and

Fifth: there was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

The United States presented proof, beyond a reasonable doubt, that:

1. between April and August of 2025, Carlos Contrares repeatedly and consistently stole high-quality oil from PAAP using the white vacuum truck with the marking "MIS LLC";

2. these thefts occurred several times a week and often repeatedly on a single day;

3. this stolen oil was repeatedly and consistently delivered to HDE's 7 Rivers yard;

4. the PAAP pipelines and the 7 Rivers yard are in New Mexico;

5. the stolen oil was then repeatedly and consistently sold to 9G Energy and transported interstate into Texas;

6. according to the load tickets, from June 24, 2025 to August 19, 2025, Caribou Energy / 9G transported approximately 4,475 barrels from the 7 Rivers yard to Texas and paid HDE $362,873;

7. on July 30, 2025, HDE received 411 barrels of stole oil from Conteras. In the summer of 2025, the market value for crude oil with a low BS&W was approximately $67 to $68 per barrel according to the West Texas Intermediate. Thus, on July 30, 2025, HDE received over $27,000.00 worth of stolen crude oil. This oil was quickly sold and transported to Texas;

8. on August 21, 2025, HDE received 281 barrels of stole oil from Conteras. Thus, on August 21, 2025, HDE received over $18,000.00 worth of stolen crude oil;

9. Ortega was the sole employee for HDE and worked there from on or about June 22 to his arrest on August 21, 2025;

10. Ortega was aware that Maxwell Jensen was actively involved in the management of HDE and received part of the proceeds from HDE's sale of oil;

11. Ortega was aware that Maxwell Jensen had been arrested and was on conditions of release for charges involving illegal oil sales and transportation of stolen oil;

12. during his employment Ortega, became aware that the oil being brought in by Contreras and sold to 9G Energy, was not waste oil and was, in fact, stolen;

13. Ortega continued to work at HDE, accepting loads of stolen oil from Contreras and assisting in the sales of the stolen oil to 9G Energy. Every load contraband accepted by Ortega during the charged dates exceeded $5,000 in value, satisfying § 2314's jurisdictional threshold;

14. By documenting incoming loads, preparing outgoing load tickets, coordinating directly with 9G Energy haulers, and maintaining the yard's operational readiness, Ortega performed acts that were a substantial factor in causing the stolen oil to be transported from New Mexico to Texas. His conduct satisfies the 'caused to be transported' element under § 2314."

15. Ortega knew that proceeds from the sales of this stolen oil would be shared between Maxwell Jensen, Thomas Rees, Carlos Contreras and himself;

16. Ortega's knowledge that the oil was stolen, coupled with his repeated assistance in receiving, staging, and selling it for interstate transport, shows that he intentionally associated himself with the unlawful venture and sought its success. His continued participation—despite acknowledging the oil was too pure, too consistent, and too valuable to be waste oil—demonstrates the required intent;

17. Even if Ortega claimed not to know the oil was stolen, the evidence establishes deliberate avoidance. Ortega recognized MIS's tanker consistently delivered high-quality and unusually large volumes of oil; he knew HDE performed no purification; and he acknowledged the prices paid and charged were inconsistent with lawful market rates. These facts establish awareness of a high probability the oil was stolen, and no evidence shows he actually believed otherwise; and

18. The United States proved an agreement—tacit or express—between Ortega, Contreras, Rees, and Jensen to receive stolen oil at HDE, consolidate it, and sell it to 9G Energy for interstate transport. Conspiratorial agreement may be inferred from coordinated actions, shared economic interests, and Ortega's admissions regarding Jensen's role. The repeated deliveries, consistent pricing, and continuous interstate sales demonstrate concerted activity amounting to an agreement

19. Taken together, the coordinated thefts, Ortega's knowledge and active participation, the interstate movement of stolen oil exceeding $5,000 per load, and the participants' interdependence satisfy every element of Counts 1, 5, and 9 beyond a reasonable doubt. Christopher Ortega is guilty of Count 1 of the Superseding Grand Jury Indictment, to wit: Conspiracy to commit Interstate Transportation of Stolen Goods contrary to 18 U.S.C. §371; and Counts 5 and 9, to wit: Interstate Transportation of Stolen Goods contrary to 18 U.S.C. §§2314 and 2. Doc. 111.

**III. CONCLUSION**

The United States respectfully requests the Court adopt the above-listed findings of fact and conclusions of law, rejecting any contrary findings or conclusions. The United States further requests that, based on the above-listed findings and conclusions, Christopher Ortega is guilty of Count 1 of the Superseding Grand Jury Indictment, to wit: Conspiracy to commit Interstate Transportation of Stolen Goods contrary to 18 U.S.C. §371; and Counts 5 and 9, to wit: Interstate Transportation of Stolen Goods contrary to 18 U.S.C. §§2314 and 2. Doc. 111.

.

Respectfully submitted,

TODD BLANCHE
Attorney General
RYAN ELLISON
First Assistant United States Attorney

***/s/ Electronically filed on 8/28/2026***
JAMES DICKENS
BENJAMIN SUSLAVICH
Assistant United States Attorney
200 N. Church Street
Las Cruces, New Mexico 88011
(575) 522-2304 – Tel.

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

***/s/ Electronically filed on 8/28/2026***
JAMES DICKENS
Assistant United States Attorney